UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesse J. EVANS, Defendant–Appellant.

No. 97–3663.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1998.

Decided Sept. 22, 1999.

Mark R. Filip (argued), Office of U.S. Attorney, Criminal Division, David S. Rosenbloom, McDermott, Will & Emery, Chicago, IL, for Plaintiff–Appellee.

Richard S. Kling (argued), Chicago–Kent College of Law, Chicago, IL, for Defendant–Appellant.

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

COFFEY, Circuit Judge.

A federal jury convicted Jesse Evans, a former Chicago alderman, of racketeering (including acts of extortion, bribery, mail fraud, and official misconduct), filing false tax returns, and obstruction of justice. Evans filed a post-trial motion for new trial, alleging among other things that the prosecutors violated *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in the exercise of their peremptory challenges to exclude two African–Ameri-

cans from the jury. The district judge found no *Batson* violation, and denied the motion. The issue on appeal is whether the judge properly determined that the prosecutors offered a race-neutral basis for their challenges. We affirm.

In 1987, Evans, who is African–American, began serving as the alderman for Chicago's Twenty-first Ward, on the city's South Side. As a result of a federal corruption investigation of city officials known as "Operation Silver Shovel," he was charged in July 1996 with taking $7,300 in bribes from an undercover FBI agent and extorting $10,000 in unreported campaign contributions from a construction company. He was also charged with extorting $2,200 from a liquor license applicant and misusing more than $9,000 in City Council expense funds.

After a three-week trial, the jury convicted Evans of fifteen of the sixteen counts in the indictment. Evans then filed post-trial motions for judgments of acquittal, *see* Fed.R.Crim.P. 29, and for a new trial, *see* Fed.R.Crim.P. 33. One of the issues he raised was the *Batson* claim asserted here. The trial court denied both the motion for judgment of acquittal and the motion for a new trial, and noted that Evans had failed to prove that the peremptory challenges were racially motivated. The court then sentenced Evans to forty-one months' imprisonment.

■ Allegations of racially-based peremptory challenges are evaluated under a three-part analysis: (1) the defendant must make a prima facie showing that the government exercised the challenge because of race; (2) the government is then required to articulate a race-neutral reason for the challenge; and (3) the court determines whether the defendant has carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 96–98, 106 S.Ct. 1712; *Morse v. Hanks,* 172 F.3d 983, 985 (7th Cir.1999). We focus on the third step because we agree with the trial judge's finding that the government of-

fered a race-neutral explanation that moots the preliminary question whether Evans established a prima facie case of discrimination. *See Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *United States v. Roberts*, 163 F.3d 998, 999 (7th Cir.1998). The trial court's determination about the ultimate question of discriminatory intent is a finding of fact, which will be overturned only if clearly erroneous. *Hernandez*, 500 U.S. at 364–65, 111 S.Ct. 1859 (plurality opinion); *Roberts*, 163 F.3d at 999.

■ The challenges in question are of Crystal Clay and Karen Roberts, both African–Americans. The prosecutors told the judge that they intended to call city auditors to testify about city reimbursement rules and procedures, including "what you can and cannot expense," and that they struck Clay because she was an auditor for the City of Chicago Department of Aviation, and this case raised "key issues ... relating to city financial procedures"—namely, mail fraud charges that Evans had defrauded the City of Chicago through abuse of his alderman expense account. They explained that they did "not want [Clay] bringing that background and knowledge of whatever preconception she has about what is to be paid and not paid, how things should be put through." The judge accepted the government's explanation and permitted the exclusion, remarking that she "could see not wanting your own [juror] in there saying '[w]ell, wait a minute, this is what this means' when you have got your witness to say this is proper and this is improper." She re-emphasized this point in her order denying Evans' post-trial *Batson* claim: "Understandably, [the government] would not want someone who might have specialized knowledge in this area second guessing the [g]overnment's witnesses during deliberations."

We refuse to disturb the judge's determination. Although Evans now argues that the government did not strike white venire members with financial backgrounds similar to Clay, we note that none of these persons worked for the City of Chicago—and there was no reason to assume, based on their descriptions of their activities, that any of them ever had worked for the City of Chicago. As the government indicates, the same payment voucher system is used in the Department of Aviation as in all of the other City of Chicago departments. The prosecutors naturally would have been concerned that Clay had "specialized knowledge" of city payment procedures that could "color her ability to evaluate the facts from a neutral perspective." *See Soler v. Waite*, 989 F.2d 251, 254 (7th Cir.1993); *see also Pemberthy v. Beyer*, 19 F.3d 857, 869 (3d Cir.1994) (noting "common" strategy among trial lawyers "to strike ... accountants in cases with accounting or tax issues").

■ As for venire member Karen Roberts, the government stated that it struck her for three reasons: (1) she was a convicted felon; (2) she and Evans were both members of the Masonic order; and (3) she had personally solicited business from a suburban Chicago mayor about whom the government had grand jury information suggesting that he engaged in corrupt practices. Because the first reason—Roberts' conviction—provides sufficient grounds for striking her, we limit our discussion to that issue.

During jury voir dire, Roberts said that she had received a year's probation twenty-five years earlier for a conviction that she referred to as "grand theft." Although the record is silent as to why the government never moved to strike Roberts for cause, this reference prompted the government to exercise a peremptory strike on the ground that she was a "convicted felon." When defense counsel objected to the strike, the judge asked the government for its reasons. The prosecutors explained that it was "fairly obvious the government doesn't want jurors ... to be felons, particularly for grand theft." The judge, both at trial and in her post-trial order, found

the government's asserted basis for the strike to be appropriate. Evans challenges this finding, and now argues that the prosecutors never introduced any proof establishing that Roberts' conviction was a felony as opposed to a misdemeanor.

Evans misapprehends the government's burden under *Batson*. Although a statutory bar disqualifies persons with felony convictions from acting as jurors, *see* 28 U.S.C. § 1865(b)(5), the government did not move to strike Roberts "for cause" on this basis. *See United States v. Uribe*, 890 F.2d 554, 561 (1st Cir.1989) (right to exclude felons under § 1865(b)(5) must be affirmatively invoked). Instead, as has long been permissible under our jury selection process, the government elected to exclude her through one of its peremptory strikes. Unlike a challenge for cause, a peremptory strike need not be persuasive or even plausible so long as it is race-neutral. *See Purkett v. Elem*, 514 U.S. 765, 767–78, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Any neutral reason, no matter how "implausible or fantastic," even if it is "silly or superstitious," is sufficient to rebut a prima facie case of discrimination. *Id.* at 768, 115 S.Ct. 1769. As noted in *Purkett*, in which two black venire members were struck because they had long, curly and unkempt hair and facial hair, an explanation passes muster "[u]nless a discriminatory intent is inherent in [it]." *Id.*

We agree with the district court that the prosecutors offered a race-neutral reason for striking Roberts when they asserted that they did not want a person with a grand theft conviction to serve on the jury. Because their explanation at this stage of the inquiry need only be " 'facial[ly] valid[ ],' " *see id.* (quoting *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859), they were entirely justified to accept Roberts' word at voir dire that she committed grand theft. Irrespective of whether grand theft is classified as a felony or misdemeanor, it is a serious crime that alone provides a sufficient basis for their peremptory strike. The prosecutors could legitimately defend their strike based on concerns about Roberts' truthfulness, her commitment to following the law or her attitude towards the criminal justice system. *See, e.g., United States v. Ferguson*, 935 F.2d 862, 865 (7th Cir.1991) ("[T]he government's reservations concerning [two venire members] were well-founded in light of their previous experience with the criminal justice system—both men had been the subject of criminal prosecution."). We see nothing at all "outlandish" or "fals[e]" about the prosecutors' explanation, *United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir.1998), and conclude that the trial court did not commit clear error in choosing to believe it.

Because we accept the trial court's determination that the prosecutors honestly struck Clay and Roberts for race-neutral reasons, we AFFIRM.