In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1971

CARMEN ALVERIO,

Plaintiff-Appellant,

v.

SAM'S WAREHOUSE CLUB, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 3726--Rudy Lozano, Judge.

Argued December 8, 2000--Decided June 6, 2001


   Before FLAUM, Chief Judge, and RIPPLE,
and EVANS, Circuit Judges.

   EVANS, Circuit Judge.  Carmen Alverio
worked as a food demonstrator at Sam's
Warehouse Club. There, she encountered
assistant manager Terrence Lloyd who, she
claimed, had the disconcerting habit of
laterally adjusting his groin while
wandering the aisles of the store. Lloyd
allegedly began harassing Alverio, and
eventually, after matters worsened, she
filed suit and went to trial. Sam's Club
argued that Lloyd's behavior was not
harassing. Alternatively, it asserted the
Ellerth/Faragher affirmative defense
alleging that Alverio failed to take
advantage of the store's harassment
policy by not telling management of the
situation. A jury found in favor of Sam's
Club. Alverio then filed a post-trial
motion for judgment notwithstanding the
verdict or in the alternative for a new
trial. The motions were denied. On
appeal, Alverio renews her prior
objections, asserting that peremptory
challenges were used by Sam's Club to
exclude females from the jury panel and
that admissible testimony was improperly
kept from the jury. In a rather
convoluted argument developed over only a
page and a half of her brief, she claims
she was wronged by the trial judge who
disqualified himself after the trial and
before ruling in her post-trial motions.
We will address the last claim first.

The presiding judge in this case, which went to trial in October of 1998, was Robert H. Cleland, a judge on the United States District Court for the Eastern District of Michigan. Judge Cleland was sitting by designation on the United States District Court for the Northern District of Illinois. After her defeat at the hand of the jury, Alverio filed post-trial motions in November of 1998. The motions were pending when, on March 19, 1999, Judge Cleland entered an order removing himself from further participation in the case pursuant to 28 U.S.C. sec. 455(b)(4). The case was then reassigned to Judge Rudy Lozano. The disqualification/reassignment prompted the filing of a "Supplemental Post Trial Motion" by Alverio on March 29, 1999, which in turn caused Judge Cleland to send a letter to Judge Lozano on April 13, 1999, which stated:

It is my understanding that you have been reassigned the above-captioned case upon my recusal decision. I write to provide additional information in the wake of the plaintiff's "Supplemental Post Trial Motion" seeking a new trial. The plaintiff assumes too much in her motion--specifically that the basis of a need for my sua sponte financial-interest disqualification existed at the time of her trial. It did not. The basis arose long after the trial had been concluded, and indeed, after the filing of her first post trial motion in November 1998. I took action after the possibility of a conflict came to my attention and I had confirmed the need for a disqualification.

Eventually, after certifying that he reviewed the case and was prepared to proceed, Judge Lozano entered a thorough, 20-page order on March 16, 2000, denying all of Alverio's post-trial motions.

Alverio's precise point in raising an issue about the disqualification of Judge Cleland and the reassignment of the case to a new judge is unclear. If she is claiming she went to trial before a judge who had an axe to grind against her or an inclination to want to help the defense, she doesn't come right out and make that claim. And that sort of claim would not be sustainable in light of Judge Cleland's clear statement that his need to step aside didn't exist until after

the trial was finished.

If, as seems more likely, Alverio's real complaint is that she was prejudiced because Judge Cleland's disqualification caused her case to be, in her own words, "reassigned to a new judge wholly unfamiliar with the case," that claim is a nonstarter, given Judge Lozano's clear statement where he says:

The Court has reviewed and now certifies its familiarity with the relevant portions of the proceedings, including but not limited to review of the trial transcript, as they relate to the issues presented in Alverio's first post-trial motion and has determined that it can rule on Alverio's first post-trial motion without prejudice to the parties.

Ideally, one judge handles a case from start to finish. Particularly, the same judge handles the trial and post-trial phases of the case. But that is not always possible. See Bankcard America v. Universal Bancard Systems, 203 F.3d 477 (7th Cir. 2000), where even the former chief judge of this circuit was called upon to jump into a case after a trial--a much more complicated trial than this one, we might add--and before motions after verdict were resolved. And here, when Judge Cleland stepped aside, Judge Lozano stepped in as authorized by Rule 63 of the Federal Rules of Civil Procedure. While this situation is not ideal, it certainly provides no basis for Alverio's contention that she is entitled to a do-over of her trial.

With that, we turn to the facts and Alverio's other claims for relief. Alverio worked for Sam's Club from 1992 until 1996. She began at a Northlake store but was later transferred to a new store in Des Plaines, Illinois. At both locations, she served as a food demonstrator. Her immediate boss was Patricia Zemaitis. While at the Northlake store, she met Lloyd, who was friendly and asked for her phone number. She declined his offers, but he continued to visit her table and make what, according to her, were inappropriate comments while adjusting his groin. Eventually, Alverio was transferred to the new Des Plaines store, along with Lloyd and Zemaitis. Sandy Hixon was the general manager of the Des Plaines store.

While at Northlake, Alverio told Zemaitis about Lloyd's inappropriate conduct. At trial, Zemaitis testified that Alverio repeatedly asked her not to tell anyone else about Lloyd's conduct and begged her not to file a written report or approach the general manager. Rather, Alverio told Zemaitis to "let it go" and wait and see what happens. Alverio never reported the situation to anyone other than Zemaitis.

Allegedly, Lloyd's harassment continued until July 1995. Sometime that month, Lloyd called Alverio into the supervisor's office to reprimand her for making telephone calls on company time. However, while speaking with her, herealized that he had made a mistake and apologized. Alverio then returned to the demonstration room where she was washing dishes. According to Lloyd, he followed her to the demonstration room to smooth things over. As a gesture of good will, he began helping her clean up. He stood beside her at the sink, handing her dishes. At one point he handed her a knife and asked if she was going to have the Mafia kill him for wrongly reprimanding her. She joked back that he had better be careful, because a Puerto Rican knows how to use a knife.

Alverio's version of this incident stands in stark contrast to this exchange. She alleges that Lloyd came into the demonstration room, grabbed a butcher knife, and said something about the Mafia. Then, she contends he touched her stomach with the tip of the knife and dragged it across her stomach.

Despite the dramatic events of the day, Alverio did not report this incident to anyone before leaving work. Instead, that evening she told her son, a Chicago police officer. Her son called the police, and Lloyd was arrested at work the next day. He was taken out of the store in handcuffs and was immediately suspended by Sam's Club.

Upon learning of the arrest, Hixon began an internal investigation. She spoke with Zemaitis, who told her, for the first time, that Lloyd had made improper sexual advances towards Alverio in the past. To Hixon, Zemaitis claimed that she had not reported this earlier because "she didn't

think it was a big deal at the time."
However, at her deposition and at trial,
Zemaitis told a different story, alleging
that she had not reported Lloyd's
frequent groin manipulation because she
didn't think it would do any good.

After the knife incident, Alverio took
a few weeks off. When she returned to
work she felt her coworkers and Hixon
were giving her the "cold shoulder," and
so she discussed the situation with the
store manager. Hixon apologized for
appearing indifferent towards Alverio and
applauded her for remaining at work in
the midst of this odd situation. She also
reassured Alverio that eventually people
would forget the incident and relations
with her coworkers would return to
normal.

Lloyd was charged with a crime in
connection with the knife encounter.
Sometime before the start of his criminal
trial, Hixon called Zemaitis into her
office and asked if she planned to attend
the trial. Zemaitis had not been
subpoenaed. Hixon suggested that she not
do so. Zemaitis took this statement to be
a threat.
Lloyd was acquitted of all criminal
charges and was transferred to another
Sam's Club in Indianapolis. Alverio
continued to work at the Des Plaines
store for another year and a half, until
she was terminated for physical and
verbal abuse of a coworker.

The incident that precipitated her
termination occurred in September 1996,
when she attempted to purchase "code 2"
merchandise--damaged goods which the
store sells at a discount. Mike
DiVincenzo, a cash operator supervisor,
was called to help a cashier process this
purchase because it requires a supervisor
to physically override the regular
pricing system. DiVincenzo overrode the
system, but after doing so, he realized
that an employee, Alverio, was making the
purchase. Employees are not allowed to
purchase "code 2" goods. He explained
this to Alverio, who began arguing with
him. Because a line had formed behind
Alverio, DiVincenzo tried to pull her
cart from the line towards the refund
counter. Alverio refused to leave and
told him that she would not budge until
the situation was resolved. As he
attempted to move her cart, she struck

him three times on the back of the hand and called him an "asshole." After investigating this incident, Hixon fired Alverio.

Alverio then filed suit, alleging sexual harassment and retaliatory termination. On summary judgment, the claim of retaliatory termination was dismissed on the merits. A jury found in favor of Sam's Club on the remaining claim of sexual harassment.

In order to preserve a motion for judgment as a matter of law after the jury verdict has been entered, Federal Rule of Civil Procedure 50 requires that a motion for judgment as a matter of law be made at the close of all evidence. See Fed. R. Civ. P. 50(b)./1 Alverio failed to satisfy this prerequisite and thus is precluded from bringing this motion on appeal. See Downes v. Volkswagen of America, Inc., 41 F.3d 1132, 1139 (7th Cir. 1994)./2

In the alternative, Alverio seeks a new trial. However "[a]s an appellate court, our review of the jury trial below is limited in nature." Gentry v. Export Packaging Co., 238 F.3d 842, 847 (7th Cir. 2001). Alverio bears a heavy burden in convincing us that the district court should have granted her a new trial. Lowe v. Consolidated Freightways of Delaware, Inc., 177 F.3d 640, 641 (7th Cir. 1999). We will reverse a district court's denial of a motion for a new trial only upon a showing that the court abused its discretion. Id. We will not re-weigh the evidence, and we will draw all reasonable inferences that can be drawn from the evidence and will view the evidence in the light most favorable to the prevailing party--Sam's Club. Jardien v. Winston Network, Inc., 888 F.2d 1151, 1154 (7th Cir. 1989). We ask only if the verdict stands against the weight of the evidence or if, for other reasons, the trial was not fair to the losing party. Pickens v. Runyon, 128 F.3d 1151, 1156 (7th Cir. 1997).

Alverio bases her request for a new trial on two arguments--improper jury selection and the exclusion of evidence. We begin with jury selection. The venire consisted of 3 women and 11 men. Judge Cleland conducted voir dire and asked each attorney to exercise three

peremptory challenges. Alverio struck three men and Sam's Club struck all three women. Alverio raised a Batson challenge, requiring Sam's Club to explain each strike. After reviewing these justifications, Judge Cleland determined that the strikes were not motivated by invidious discrimination.

The rule in Batson v. Kentucky, 476 U.S. 79 (1986), that prohibited the use of peremptory challenges based on race has been extended to the exercise of peremptory challenges that are the result of intentional gender discrimination, see J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994). The right to have jury members selected based on nondiscriminatory criteria also applies in the civil context. See Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991).

Under Batson, allegations of discriminatory peremptory challenges are evaluated via a three-part mini-hearing: (1) the opponent of the strike must make a prima facie showing that the striking party exercised the challenge because of a discriminatory reason; (2) the striking party must next proceed to articulate a gender-neutral reason for the challenge; and then (3) the court must determine whether the opponent of the strike has carried his burden of proving purposeful discrimination. Batson v. Kentucky, 476 U.S. at 96-98. "[T]he ultimate burden of persuasion regarding racial (or gender-based) motivation rests with and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam).

The parties do not contest the first step. So, we focus on Sam's Club's proffered reasons and the judge's acceptance of these justifications. However, we keep in mind that "[t]he trial court's determination about the ultimate question of discriminatory intent is a finding of fact, which will be overturned only if clearly erroneous." United States v. Evans, 192 F.3d 698, 700 (7th Cir. 1999). "Once the trial judge has been persuaded of the neutrality of the . . . reason for striking a juror, we have 'no basis for reversal on appeal unless the reason given is completely outlandish or there is other evidence which demonstrated its falsity.'" United

States v. Griffin, 194 F.3d 808, 826 (7th Cir. 1999) (quoting Morse v. Hanks, 172 F.3d 983, 985 (7th Cir. 1999)).

   Alverio argues that Sam's Club used its peremptory challenges to systematically remove women from the jury pool. She contends that the justification for its strikes--the lack of business experience and knowledge--was pretextual and invalid and argues that this is evidenced by the fact that the challenged female jurors had educational backgrounds that were greater than or equal to that of several of the empaneled male jurors. Finally, she asserts that an all-male jury was particularly unjust, given that the case involved sexual harassment claims which are "women's issues."

   Sam's Club, as we said, struck the three females: (1) Nancy Kiec, a 38-year-old, married, unemployed woman with no children; (2) Robin Braxton, a 38-year-old mother of three who had worked as a hospital housekeeper for 3 years; and (3) Patricia Knorps, a secretary for an insurance agent, who had completed some college./3 The attorney for Sam's Club, William Holloway, explained that he struck Kiec because she was unemployed. He challenged Braxton because she was the only prospective juror who had been a plaintiff in a lawsuit and she was reluctant to discuss the outcome of that case. As for Knorps, Holloway said he was concerned that her job put her in contact with insurance companies and their lawyers. Since Holloway's firm was active in insurance litigation, he was concerned that she might be familiar with his law firm, although she did not claim to have heard of it. In addition, he thought Knorps had given equivocal answers about her level of education, stating only that she completed "some college."

   In addition to these particular objections, Holloway stated that his overall objection to all three prospective jurors was their limited work experience. He stated that he was looking for jurors with a level of "sophistication about business and how it is conducted in the work-a-day world." While he considered each juror's education level, his primary concern was work-force participation.

   As to the second step of the Batson

analysis, lawyers are given considerable leeway in formulating a gender-neutral rationale for jury strikes. United States v. Evans, 192 F.3d at 701 ("Any neutral reason, no matter how 'implausible or fantastic,' even if it is 'silly or superstitious,' is sufficient to rebut a prima facie case of discrimination.") (quoting Purkett v. Elem, 514 U.S. at 768). Here, in addition to identifying unique factors that only affected the three struck jurors--unemployment, participation as a plaintiff in a lawsuit, and employment in an insurance company-- Holloway also identified an overarching concern, extensive work-force participation, which he applied consistently to the entire array. All remaining empaneled jurors were employed, and many had considerable work experience./4

We have approved the exclusion of potential jurors because of their professions, see Griffin 194 F.3d at 826, and their lack of a profession. United States v. Jones, 224 F.3d 621, 624 (7th Cir. 2000) (affirming peremptory strike, where prospective juror was unemployed, watched soap operas, and was inactive in her community). We have also held that inadequate education and business experience are nondiscriminatory justifications for excluding prospective jurors. United States v. Tucker, 836 F.2d 334, 337 (7th Cir. 1988). Moreover, where a party gives multiple reasons for striking a juror, it is not enough for the other side to assert that the empaneled juror shares one attribute with the struck juror. Dunham v. Frank's Nursery & Crafts, 967 F.2d 1121, 1126 (7th Cir. 1992) (juror challenge rests on interplay of various factors). Several of the empaneled jurors may have had less formal education than the three female jurors, but Holloway's decision to strike was not based on this factor alone.

Because all the women were removed from the panel, Alverio contends that Sam's Club's proffered reason was pretextual and rested on a stereotype that women have less business experience. First, the exclusion of all members of a specific minority group does not, on its own, establish that the peremptory strikes were discriminatory. Dunham, 967 F.2d at 1126 (affirming peremptory challenge of only black juror); Tucker, 836 F.2d at

340 (peremptory strikes excluding all four black venire persons not motivated by racial bias). Second, we doubt that at this point in time, women can be said to have less work experience than their male counterparts; thus, it is unlikely that "having business experience" can serve as a proxy for "male juror." Even were this true, and Mr. Holloway's stated reason had a disparate impact on female jurors, this would still be irrelevant. United States v. Roberts, 163 F.3d 998, 999 (7th Cir. 1998) ("Batson establishes a rule of disparate treatment not disparate impact."). The question here is whether Mr. Holloway had a gender-neutral reason for striking these jurors. According to Judge Cleland, he did, and we give great deference to the judge's determination of discriminatory intent. Roberts, at 1000 (on appeal, district judge's decision that prosecutor's lame explanations for peremptory strikes were honest, must be accepted). The third step of the Batson jig requires the judge to make a factual determination based on Mr. Holloway's demeanor and credibility. This is a judgment call which the trial judge is in a much better position to make than we are. Even were we to find his decision to be dubious, we would not reverse unless we were left with a "definite and firm conviction that a mistake had been made." Jones, 224 F.3d at 624. Here, we find that Judge Cleland did not err in allowing Sam's Club to strike the three female jurors from the pool.

Finally, we decline Alverio's invitation to find that sexual harassment trials must necessarily include female jurors. The idea that one gender is better suited to hear a class of cases than another, is itself a sexist concept. Alverio contends that this trial involved "women's issues." We disagree. This trial concerned an allegedly hostile work environment created by sexually explicit comments and gestures. Productive work environments, free of harassment, are not merely a woman's worry, they are a national concern. Alverio's assumption that women, by virtue of their gender, are better suited to adjudicate these cases falls prey to the very stereotypical generalizations that the Court sought to eradicate in J.E.B. v. Alabama ex rel. T.B., 511 U.S. at 132-33 (documenting "romantic paternalism" that justified exclusion of women from

polluted atmosphere of courtrooms). Moreover, protection from gender-based discriminatory strikes is not a one-way street. It is a right that extends to both genders. Id. at 141.

Next, we turn to Alverio's argument that evidence critical to her case was impermissibly excluded from trial. Alverio bears a heavy burden in requesting that we overrule the district court's evidentiary rulings. See Speedy v. Rexnord Corp., 243 F.3d 397, 404 (7th Cir. 2001). We review the exclusion of evidence for abuse of discretion and give considerable deference to the trial judge. See United States v. Jackson, 208 F.3d 633, 636 (7th Cir. 2000). Thus, even if a judge's rulings are found to be erroneous, they may be deemed harmless if the record indicates that the end result of the trial would have remained unchanged. See United States v. Smith, 230 F.3d 300, 307 (7th Cir. 2000).

First, Alverio argues that Judge Cleland improperly excluded evidence of the "cold shoulder" treatment she received from both male and female coworkers after she had Lloyd arrested for, as she claimed, threatening her with a knife. She contends this was evidence of hostility towards women at Sam's Club and the company's lack of responsiveness towards sexual harassment complaints. However, this circumstantial evidence requires a long chain of inferences to reach its ultimate goal. Based on the responses of rank-and-file workers to a one-time, unusual occurrence--the arrest of a coworker--Alverio would ask the jury to make broad generalizations about the management policies and general work environment at Sam's Club. Even if relevant, such evidence has limited probative value, and Judge Cleland acted within his discretion in excluding it. See United Stated v. Falco, 727 F.2d 659, 664 (7th Cir. 1984) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence and may therefore render it more susceptible to exclusion as unduly confusing . . . .") (quoting United States v. Ravich, 421 F.2d 1196, 1204 n.10 (2nd Cir. 1970)).

The second evidentiary question involves the "threat" allegedly made by Hixon to

Zemaitis about attending Lloyd's criminal trial. Again, Alverio asserts that this was evidence of the hostile environment at Sam's Club and alleges that this evidence would have helped buttress her argument that Sam's Club retaliated against workers who filed complaints. Again, even if relevant, this evidence had limited prohibitive value, requiring jurors to connect the dots in a chain of inferences. See McCluney v. Joseph Schlitz Brewing Co., 728 F.2d 924, 928-29 (7th Cir. 1984) (in Title VII retaliatory termination case, no error in excluding relevant evidence showing employee's past behavior demonstrated concern for female employees, where evidence had slight probative value). Judge Cleland held that allegations concerning a state criminal matter were too far afield from the central issue in the case and would serve to confuse the jury. We tend to agree. Actions taken by Sam's Club to minimize the personnel disruptions caused by a criminal investigation and trial were not necessarily indicative of how the organization routinely reacted to claims of sexual harassment. Zemaitis held a supervisory position, and Hixon may have thought her attendance at the trial was inappropriate behavior for a manager. Moreover, Zemaitis testified on behalf of Alverio at trial and thus was able to testify directly concerning the environment at Sam's Club and her own response to Alverio's complaint as a member of management. Again, even were we in hindsight to made a different call, we would not overturn a trial judge's assessment unless it is clearly erroneous and would have affected the outcome of the trial. See United States v. Fawley, 137 F.3d 458, 466 (7th Cir. 1998) ("[B]ecause it is a comparison of intangibles, a district court's Rule 403 balancing is afforded a special degree of deference: only in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot, the trial judge.") (internal quotes omitted).

Next, Alverio claims that Judge Cleland erred in excluding evidence of Sam's Club's alleged retaliatory termination of her. Judge Cleland excluded this evidence because it was, in his view, irrelevant./5 Alverio was terminated a year and a half after her last encounter with Lloyd. On summary judgment, the

court had already determined that her termination was based on a different set of unrelated facts--her physical and verbal abuse of a coworker. Admission of this evidence, which was unrelated to the material facts and remote in time to the events at issue, would only serve to confuse the jury and thus was properly excluded.

For all these reasons, the judgment of the district court is AFFIRMED.

FOOTNOTES

/1 "After the 1991 amendment to Rule 50, it is no longer technically proper to move for either a 'directed verdict' or for 'judgment notwithstanding the verdict'; instead, a party's motion should be denominated as a motion for 'judgment as a matter of law.'" 9 Moore's Federal Practice, sec. 50App.08 (Matthew Bender 3d ed. 1997).

/2 Sam's Club asserts that Alverio did not make a motion for judgment as a matter of law at the close of all evidence. Because Alverio did not file a reply brief, she did not refute this. The district court docket does not contain a record of a motion for judgment as a matter of law having been filed at the close of plaintiff's evidence or at the close of all evidence.

/3 Although at oral argument Alverio bemoaned the rough and tumble nature of the remaining male jurors, she struck the three most educated potential jurors, all of whom held managerial positions. One, Hetrick, was college-educated and served as a business director for a food supplier. Another, Chana, was a public school assistant principal who held a master's degree, and the last, Vaseloff, who had an MBA, served as an electronic engineering manager.

/4 Juror Haskins had been a postal worker for 28 years. Jurors Juday and Hodul had worked 35 and 32 years, respectively. Juror Entona had spent 10 years as an auto repair specialist, while juror Hawkins had been a machine operator for 7 years.

/5 Although in her brief, and again in oral argument, Alverio claimed that her retaliation claim was merely time-barred, it was not. The district judge granted summary judgment on this claim in favor of Sam's Club on the merits.