In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 16-3546

RUBEN SANCHEZ,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO, *et al.,*

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-06347 — **Edmond E. Chang,** *Judge.*

———————

ARGUED NOVEMBER 9, 2017 — DECIDED JANUARY 16, 2018

———————

Before RIPPLE, MANION, AND SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Ruben Sanchez appeals the denial
of his motion for a new trial in his § 1983 action against Officer
Louis Garcia of the Chicago Police Department. Sanchez al-
leges that the trial court made multiple evidentiary errors,
gave an improper jury instruction, and wrongfully accepted
a partial verdict. Because we conclude that a new trial is not
required, we affirm.

**I.**

The facts underlying the parties' dispute are contested. However, because the jury rendered a verdict in favor of Garcia, we recount the facts, unless noted otherwise, "in the light most favorable to him." *See Staub v. Proctor Hosp.*, 562 U.S. 411, 413 (2011).

Late on the night of August 10, 2010, Garcia and his partner, Officer William Murphy, were on patrol in an unmarked police car. Garcia observed Sanchez fail to stop his van as required at multiple intersections and fail to maintain his lane three times. Garcia also observed that the van's passenger sliding door was completely open. Garcia turned on his siren and lights, but Sanchez did not stop. Garcia eventually pulled up next to Sanchez in the left lane, and Murphy, who was sitting in the passenger seat, motioned for Sanchez to pull over. Sanchez responded by extending his middle finger (Sanchez maintains he flashed a "peace" sign) and waving for the officers to pass him.

After driving a bit farther, Sanchez eventually pulled over near his home and immediately got out of his van, stumbling as he did so. Garcia noted that Sanchez smelled of alcohol, had red, bloodshot eyes, and was mumbling vulgarities about the police. Garcia approached Sanchez and ordered him to get on the ground. Sanchez refused and stood with his hands clenched in fists by his sides. Sanchez then took a swing at Garcia, but missed. Garcia responded by striking Sanchez in the face and performing an emergency takedown maneuver to restrain him. At that point, Murphy, who had been on the other side of the van, came to assist Garcia. When the officers searched the van, they found an open beer can and marijuana.

Sanchez's version of events after he stopped begins the same way, with him stumbling out of the van. However, Sanchez maintains that he struggled to exit the van because of reconstructive surgery on his stomach that was performed after a traffic accident in 2008. Apparently, this surgery left his stomach badly disfigured and makes it difficult for him to get out of his van. He also claims that his stomach prevented him from getting on the ground, as he cannot lie on his stomach. Sanchez believes this fact should have been evident to Garcia because Sanchez was not wearing a shirt at the time of the stop. Sanchez states that, after exiting the van, he raised his hands in the air, and Garcia struck him unprovoked. Sanchez says he responded by telling Garcia that he could not be knocked down that way, so Garcia struck him again, then threw him to the ground on his stomach, stomped on his back, and hit him in the back of the head.

After being arrested, Sanchez was taken to the police station and placed in a holding cell. Officer Karen Etti was called to give Sanchez a breathalyzer test. When she went into the cell, Sanchez was lying on the floor, smelling of alcohol and mumbling profanities. When Etti asked Sanchez to get off the floor so she could administer the test, Sanchez refused (he claims he could not get off the floor because of his stomach pain), but suggested they could pull him off the floor by his pants. Eventually, with the assistance of other officers, Sanchez was placed on a bench, but he then went back down to the floor. This caused Etti to conclude Sanchez was too intoxicated to be in custody, so she requested emergency medical assistance.

One of the paramedics dispatched was Sean Ragusa. He detected the odor of alcohol on Sanchez, but found Sanchez

alert and able to answer questions. In his report, based on his conversations with Sanchez and Garcia, Ragusa made a notation ruling out battery as a cause of Sanchez's injuries.

After he declined treatment at the hospital, Sanchez was taken to the jail. When he was logged in just before 5:00 AM on August 11, the lockup keeper at the jail made a notation in the arrest report that Sanchez did not appear visibly under the influence of alcohol or drugs.

Sanchez was eventually charged with aggravated driving under the influence ("DUI").[1] One day, while he was awaiting trial in jail, Sanchez attempted to go to lunch. Officer Tyrone Felix prevented him from doing so, allegedly by throwing Sanchez to the ground and dragging him to the dormitory. Felix denied this, and maintained that Sanchez had earlier said he did not intend to go to lunch, so it would have thrown off the head count to allow him to go.

A jury convicted Sanchez of the aggravated DUI. He was sentenced to 18 months' imprisonment and a year of supervised release. Sanchez filed a direct appeal of his conviction, alleging, *inter alia*, denial of the right to self-representation and ineffective assistance of counsel. The Illinois Appellate Court affirmed his conviction, *People v. Sanchez*, No. 1-11-0900, 2013 WL 4711727 (Ill. App. Ct. Aug. 29, 2013), and the Illinois Supreme Court denied his petition for leave to appeal, *People v. Sanchez*, 2 N.E.3d 1049 (Ill. 2013).

---

[1] His DUI was "aggravated" because his license was suspended at the time of his arrest. *See* 625 ILCS 5/11-501(d)(1)(G).

Before the appellate courts had resolved his direct appeal, Sanchez filed a petition for post-conviction relief, again alleging numerous grounds for relief. The trial court denied his petition on standing grounds. On appeal, the Illinois Appellate Court concluded that his petition was timely filed, but denied relief on the merits. *People v. Sanchez*, No. 1-13-0369, 2015 WL 631544 (Ill. App. Ct. Feb. 11, 2015). The Illinois Supreme Court denied Sanchez's petition for leave to appeal. *People v. Sanchez*, 39 N.E.3d 1009 (Ill. 2015).

While seeking relief from the Illinois state courts, Sanchez filed the instant lawsuit in the Northern District of Illinois. His initial complaint named a multitude of defendants and made numerous allegations, but the action ultimately whittled down to three claims that went to trial: (1) Garcia used excessive force in arresting Sanchez on August 10, (2) Garcia lacked probable cause to arrest Sanchez, and (3) Felix used excessive force on Sanchez in the jail.

Before trial, the district court resolved several motions in limine. Among them, the district court concluded that, as a matter of issue preclusion, Garcia could use Sanchez's conviction for DUI to establish that Sanchez was, in fact, driving under the influence of alcohol or drugs at the time of his arrest. During the trial, Sanchez submitted a proposed jury instruction that stated the jury merely had to take it as established that he had been *convicted* of the DUI. Sanchez's proposed instruction also informed the jury of his then-pending post-conviction challenge (the Illinois Supreme Court had not yet denied his petition for leave to appeal). The district court declined to use Sanchez's instruction, instead informing the jury that it must take it as conclusively proven that Sanchez was driving under the influence on the day of his arrest.

Three other events before the case went to the jury are per-
tinent to this appeal. First, the district court allowed Murphy's
deposition testimony (Murphy had moved to Florida and was
not available for trial), which contained Murphy's accounts of
what he had been told by Garcia about the stop and arrest, to
be read to the jury. Second, the court allowed the introduction
of Ragusa's paramedic's report, which was based in part on
Ragusa's discussions with Sanchez and Garcia. Sanchez did
not object to the introduction of either piece of evidence.

Third, at the close of the defendants' cases, Sanchez sought
to introduce the portion of his arrest report prepared by the
lockup keeper at the jail, specifically the lockup keeper's no-
tation that Sanchez was not visibly under the influence of
drugs or alcohol when he was brought to the jail. Garcia ob-
jected to the introduction of this evidence, arguing it would
be unfair to introduce it at that point in the trial. The district
court determined that the evidence was proper rebuttal evi-
dence, but concluded that Sanchez could not authenticate the
report, as he had not called the lockup keeper to testify, nor
did he have a custodian of records or someone else who could
lay the foundation of authenticity. Consequently, the court
excluded the evidence.

The case went to the jury. After half a day of deliberations,
the jury sent a note to the judge indicating that it was unable
to reach consensus on a verdict concerning the claim against
Felix. The court instructed the jury to continue deliberating.
Subsequently, the jury sent another note to the judge, this
time stating that it had reached a verdict on the claims against
Garcia the day before, but remained unable to agree to a ver-
dict on the claim against Felix. Later, the jury sent another
note indicating the same problem.

The court concluded, over Sanchez's objection, that it should accept a partial verdict. The court reasoned that the cases against Garcia and Felix were only incidentally connected and that accepting a verdict on the claims against Garcia would not risk an ultimately inconsistent verdict on the claim against Felix. The court called the jury back in, and it rendered a verdict in favor of Garcia on the excessive-force and false-arrest claims. The district court declared a mistrial on the claim against Felix.

Shortly thereafter, Sanchez settled his claim against Felix and filed a motion for a new trial on the claims against Garcia. The district court denied the motion. Sanchez appeals.

## II.

We review the denial of a motion for a new trial only for abuse of discretion. *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 939 (7th Cir. 2001). In performing such a review, "[w]e ask only if the verdict stands against the weight of the evidence or if, for other reasons, the trial was not fair to the losing party." *Id.*

Here, Sanchez asserts that the district court committed numerous errors that made the trial unfair: (A) the court erred by giving the jury its issue-preclusion instruction; (B) the court erred by declining to admit the lockup keeper's notation on the arrest report; (C) the court erred by admitting hearsay testimony; (D) the court erred by accepting a partial verdict; and (E) the court's errors, even if individually harmless, constitute cumulative error requiring a new trial. We address each allegation in turn.

### A. The Jury Instruction

"We review de novo whether a challenged jury instruction fairly and accurately summarized the law, but the trial court's decision to give a particular instruction is reviewed for an abuse of discretion." *United States v. Erramilli*, 788 F.3d 723, 730 (7th Cir. 2015) (quoting *United States v. Lawrence*, 788 F.3d 234, 245 (7th Cir. 2015)). We will reverse a district court "only if the 'instruction misstates the law in a way that misguides the jury to the extent that the complaining party suffered prejudice.'" *Viramontes v. City of Chicago*, 840 F.3d 423, 428 (7th Cir. 2016) (quoting *Brown v. Smith*, 827 F.3d 609, 614 (7th Cir. 2016)).

On appeal, Sanchez makes two arguments for why the district court erred by giving its issue-preclusion instruction. Sanchez asserts that the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), prohibiting convicts from collaterally attacking their convictions in § 1983 actions, does not apply and that the district court failed to conduct a proper equitable inquiry into the appropriateness of applying issue preclusion in this case. Sanchez did not make either of these arguments in the district court. Instead, he proposed his alternate instruction and argued that the jury should have been made aware of his post-conviction action because it created a possibility that his conviction would be overturned. Pretermitting whether this change in tactic constitutes a waiver of these arguments, *see Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008), we nevertheless are not persuaded that the district court's instruction is cause for a new trial.

In *Heck*, the Supreme Court held that a plaintiff cannot challenge the validity of his conviction in a § 1983 action un-

less he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87. The rule serves as an absolute bar to such a claim. *See Moore v. Mahoney*, 652 F.3d 722, 723 (7th Cir. 2011).

Here, there is some debate about whether Sanchez is attempting to challenge the validity of his conviction in this suit. Sanchez's claims of wrongful arrest and excessive force do not necessarily implicate his conviction; he can argue that there was no probable cause to arrest and that Garcia used excessive force without contesting that he was, in fact, driving under the influence. *See Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) (excessive force); *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) (wrongful arrest). But, some of Sanchez's argument suggests he wants to argue to a jury that he was framed, which would implicate his conviction. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003). We need not dwell long on this point, however, as Sanchez is no longer in custody for habeas corpus purposes. *See Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (defining "in custody" for purposes of habeas corpus jurisdiction). We have indicated that *Heck* does not bar a suit by a plaintiff who is no longer in custody but who pursued a collateral attack through appropriate channels while he was in custody, even if such efforts were unavailing. *See Whitfield v. Howard*, 852 F.3d 656, 664 (7th Cir. 2017). As Sanchez sought post-conviction relief in the state courts before his release from custody, *Heck* does not apply here.

Nonetheless, even where *Heck*'s categorical bar does not apply, we have indicated that "[a] challenge that would undermine a state-court conviction or sentence would still face *Rooker-Feldman* jurisdictional problems or *res judicata* issues." *Whitfield*, 852 F.3d at 664. Accordingly, we move on to address whether, as the district court concluded, basic preclusion principles prevent Sanchez from arguing he was not under the influence on the night of his arrest.

Sanchez's criminal trial was an Illinois proceeding, so we apply Illinois law to determine the preclusive effect of his conviction. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As the dispute here only implicates one discrete issue—whether Sanchez was under the influence on the night of his arrest—we look to the law concerning issue preclusion, otherwise known as collateral estoppel. Under Illinois law, "[c]ollateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to … the prior adjudication." *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001). In addition to these threshold requirements, a court should also satisfy itself that "no unfairness will result to the party sought to be estopped," that is, the party must have had "a full and fair opportunity to present his case" and an "incentive to litigate." *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000).

The threshold requirements for application of issue preclusion are all met here. The issue—whether Sanchez was driving under the influence—is the same. Sanchez was assuredly a party to his own criminal trial. And the conviction was

final when the Illinois Supreme Court declined review of his direct appeal. Sanchez does not contest any of these points. Instead, he argues that his conviction is not entitled to preclusive effect because he did not have a "full and fair" opportunity to litigate in his criminal trial, given the alleged issues with discovery and ineffective assistance of counsel that formed the basis of his post-conviction petition. According to Sanchez, the district court should have considered his allegations concerning the fairness of his criminal trial before giving his conviction preclusive effect.

At trial, Sanchez could legitimately argue that his criminal trial was tainted by these issues, because the Illinois Supreme Court had not yet ruled on his petition for leave to appeal in his post-conviction action. *See Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986) ("For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted."); *Allianz Ins. Co. v. Guidant Corp.*, 900 N.E.2d 1218, 1231–32 (Ill. App. Ct. 2008) (concluding collateral estoppel did not apply under Illinois law where a party had a petition pending to the Indiana Supreme Court). However, on September 30, 2015, the Illinois Supreme Court denied his petition for leave to appeal, definitively ending his post-conviction action and rendering the judgment of the Illinois Appellate Court—which determined that Sanchez's trial was not affected by ineffective assistance of counsel or any other defect—final. Because we conclude the judgment of the Illinois Appellate Court has preclusive effect on Sanchez's present allegations of unfairness at his criminal trial, any error of the district court in failing independently to consider the "full and fair opportunity" criterion was harmless.

Neither party argued the preclusive effect of the decision in Sanchez's post-conviction action, but it is well established "that courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even when a party fails to do so." *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996). In addition to the goal of promoting economy, we may also add the purpose of promoting "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Here, those considerations compel the conclusion that we should give preclusive effect, if otherwise appropriate, to the decision in Sanchez's post-conviction action concerning his alleged issues in his criminal trial.

The last court to address Sanchez's post-conviction claims on the merits was the Illinois Appellate Court. Pursuant to Illinois's Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, that court reviewed Sanchez's petition to determine "whether [it] set[] forth a 'gist' of a constitutional claim." *Sanchez*, 2015 WL 631544, at *9. Though Sanchez's petition had made numerous allegations, including issues with discovery, he abandoned all but one on appeal. *Id.* at *8. His sole argument to the Illinois Appellate Court was "that his 'petition stated the gist of an arguable claim that he was denied his right to the effective assistance of counsel and his constitutional right to testify.'" *Id.* Sanchez argued that his counsel had advised him not to testify, and claimed this constituted ineffective assistance. *Id.* at *9. After reviewing the record, the Illinois Appellate Court concluded that Sanchez had "failed to raise a colorable claim of ineffective assistance of counsel" and affirmed the dismissal of his petition. *Id.* at *10.

The decision of the Illinois Appellate Court is entitled to preclusive effect on the question of whether ineffective assistance or discovery issues prevented Sanchez from having a "full and fair opportunity to litigate" in his criminal trial. First, those issues were raised in his post-conviction action. Second, those issues were litigated to a final judgment. Third, Sanchez was a party to his own post-conviction action. And finally, given the fact that Sanchez based his entire argument to us concerning the fairness of his criminal trial on his post-conviction action, we see no reason to doubt that the Illinois courts afforded a full and fair opportunity to litigate in that action or that Sanchez was motivated to litigate that action. *See generally Raper v. Hazelett & Erdal*, 449 N.E.2d 268, 271 (Ill. App. Ct. 1983) ("[C]ourts generally hold the 'full and fair opportunity to litigate' requirement to be satisfied if the parties to the original action disputed the issue and the trier of fact resolved it."). Accordingly, because the Illinois state courts have now rejected Sanchez's arguments that he was denied discovery and effective assistance in his criminal trial, Sanchez cannot now argue those same points to avoid the preclusive effect of his criminal conviction. Thus, though the district court may not have considered Sanchez's "full and fair" arguments at trial, if we were to remand the case for a new trial, the district court would have to give the same instruction it did the first time. Under these circumstances, we cannot conclude that Sanchez is entitled to a new trial.

## B. The Arrest Report

Sanchez contends that the district court improperly prevented him from introducing the portion of his arrest report showing the lockup keeper's notation that Sanchez was not visibly under the influence of drugs or alcohol at the time he

was placed in jail. The district court ruled that Sanchez could not authenticate that portion of the arrest report because he did not have the lockup keeper or a records custodian to lay the foundation. Sanchez maintains that he could have authenticated the report with testimony from Garcia, given Garcia's general experience with police reports. *See United States v. Dumeisi*, 424 F.3d 566, 574–75 (7th Cir. 2005) (concluding that the district court did not abuse its discretion by accepting authentication testimony from a "witness with knowledge" of Iraqi Intelligence Service communications generally).

For his part, Garcia does not defend the district court's authentication reasoning. Instead, Garcia argues that he objected to the evidence under Federal Rule of Evidence 403, claiming it would be "unfair" to admit the evidence so late in the trial without having called the lockup keeper. He urges us to affirm the district court on that basis.

Rule 403 allows the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by" various considerations, including unfair prejudice and undue delay. By its very terms, the Rule calls for a balancing that requires an exercise of discretion that is best performed in the first instance by the district court. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). As we can affirm the district court without performing this balancing, we decline to conduct the Rule 403 inquiry in this case.

The alternate ground for affirmance is harmless error. Federal Rule of Civil Procedure 61 provides that, "[u]nless justice requires otherwise, no error in admitting or excluding evidence … is ground for granting a new trial." An error is serious enough only "if there is a significant chance that [it] affected the outcome of the trial." *Griffin v. Bell*, 694 F.3d 817,

827 (7th Cir. 2012). In this case, the exclusion of the lockup keeper's notation did not affect the outcome of the trial.

Sanchez argues that the notation is probative of his level of intoxication at the time of his arrest, which is true. But it is of very limited probative value. As the Supreme Court itself has recognized, "as a result of the human body's natural metabolic processes, the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." *Missouri v. McNeely*, 569 U.S. 141, 152 (2013). Consequently, the passage of time lowers the probative value of the results of alcohol tests. *Id.* It does not take a great logical leap to conclude that a person's outward signs of intoxication will also decline due to the passage of time.

Here, Sanchez was brought to the jail and presented to the lockup keeper approximately five hours after his arrest. During that time, Sanchez's level of intoxication would have declined significantly. *See id.* (commenting that blood alcohol percentages can decrease "by approximately 0.015 percent to 0.02 percent per hour"). Thus, the lockup keeper's notation that Sanchez did not appear visibly intoxicated around 5:00 in the morning was not highly probative of Sanchez's level of intoxication at the time of his arrest approximately five hours earlier. This is particularly true when weighed against the testimony that was presented concerning Sanchez's visible signs of intoxication closer to the time of the arrest. He stumbled when he left the car, he had bloodshot eyes, he smelled of alcohol, and he was mumbling obscenities. Additionally, his criminal conviction established that he was under the influence that night. Given this evidence, we conclude that the exclusion of the report did not affect the outcome of the trial.

**C. The Deposition and the Paramedic's Report**

Sanchez argues that portions of Murphy's deposition and
the paramedic's report, both admitted into evidence, con-
tained inadmissible hearsay. However, Sanchez did not object
to the introduction of this evidence at trial, so we are limited
to plain-error review. Fed. R. Evid. 103(e); *Zayre Corp. v. S.M.
& R. Co., Inc.*, 882 F.2d 1145, 1151 (7th Cir. 1989). This review
is extremely limited, and we will find plain error only if the
appellant "can demonstrate (1) that exceptional circum-
stances exist, (2) that substantial rights are affected, and (3)
that a miscarriage of justice will result if the [plain-error] doc-
trine is not applied." *Stringel v. Methodist Hosp. of Ind., Inc.*, 89
F.3d 415, 421 (7th Cir. 1996) (quoting *Prymer v. Ogden*, 29 F.3d
1208, 1214 (7th Cir. 1994)).

Unsurprisingly, this is not one of those unusual cases that
call for reversal, as it does not present an exceptional circum-
stance requiring our intervention. We so conclude primarily
because there is little doubt that Sanchez knew of these al-
leged hearsay statements before the court admitted them. The
paramedic's report was created in part based on the para-
medic's discussion with Sanchez, and Sanchez's counsel di-
rectly asked Ragusa on cross-examination about the fact that
Ragusa talked to Garcia before talking to Sanchez. Its contents
should not have come as a surprise. Concerning the deposi-
tion, the record reflects that, before trial, Sanchez identified
for introduction the very statements to which he now objects
as hearsay.

As we have noted in the past, "a party cannot complain of
errors which it has committed, invited, induced the court to
make, or to which it consented." *Int'l Travelers Cheque Co. v.
BankAmerica Corp.*, 660 F.2d 215, 224 (7th Cir. 1981). Given the

indicators of Sanchez's knowledge, it appears that Sanchez made a strategic decision not to object to this evidence. It is not an appellate court's responsibility to rescue a party from a tactical decision that, in hindsight, he regrets. Accordingly, we find no plain error.

## D. The Partial Verdict

Sanchez takes issue with the district court's acceptance of a partial verdict. At trial and in his motion for a new trial, Sanchez's argument amounted to a generalized contention that because the claims against Garcia and Felix were tried together, they must be resolved together, and that there is no authority expressly allowing partial verdicts in civil cases. On appeal, Sanchez argues that the Federal Rules of Civil Procedure do not allow the acceptance of partial verdicts in civil cases. Any waiver issues aside, we conclude that there is no unconditional bar to accepting partial verdicts in civil cases.

Sanchez believes that the Federal Rules of Civil Procedure, interpreted in the light of the Federal Rules of Criminal Procedure (which expressly *allow* partial verdicts), prohibit the acceptance of a partial verdict. Sanchez divines this restriction by cherry-picking two instances of article use in the Rules. First, he cites Criminal Rule 31(b), which refers to "a" verdict when discussing partial verdicts. He then cites to Civil Rule 48(b), which refers to "the" verdict when discussing the requirement that jury verdicts be unanimous. Sanchez concludes that the use of the indefinite article in the Criminal Rules and the use of the definite article in the Civil Rules shows that partial verdicts are not allowed in civil cases.

A simple look at the entirety of the rules Sanchez cites reveals the deficiency of this argument, as both rules make

use of both articles. For instance, Criminal Rule 31(a) states that "[t]he verdict must be unanimous." And Civil Rule 48(c) states that the court may poll the jury "[a]fter a verdict is returned." Given these usages, we will not make the drafters' choice of article the deciding factor in our analysis.

Though the Rules are silent and there is no binding authority in this circuit allowing partial verdicts in civil cases, there is authority from our sister circuits indicating support for accepting a jury's conclusions on some, but not all, issues raised at a trial. *See Kerman v. City of New York*, 261 F.3d 229, 242 n.9 (2d Cir. 2001); *Robertson Oil Co. v. Phillips Petroleum Co.*, 871 F.2d 1368, 1375 n.5 (8th Cir. 1989); *Bridges v. Chemrex Specialty Coatings, Inc.*, 704 F.2d 175, 180 (5th Cir. 1983). This is not surprising, given that the Civil Rules call for interpretations that "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Interpreting the Rules to allow partial verdicts accomplishes that goal. *See generally United States v. Cotter*, 60 F.2d 689, 690–91 (2d Cir. 1932) (Hand, J.) (observing in a criminal case that "the fate of all" should not "hang in the balance" where the jury "had concluded as to [some defendants] and wanted no more time"). Thus, we agree with the Second Circuit that, in the absence of authority directly proscribing partial verdicts in civil cases, "we believe that at the very least a trial judge, in the exercise of sound discretion, may follow such a course." *Kerman*, 261 F.3d at 242 n.9.

Here, the district court properly exercised its discretion in accepting the partial verdict. Indeed, it is hard to imagine a more textbook-ready scenario for when to accept a partial verdict than this case. The district court considered that accepting

a verdict on the claims against Garcia would not risk an inconsistent verdict against Felix, as a finding concerning whether Garcia had probable cause to arrest Sanchez and whether Garcia used excessive force in making that arrest would have no effect on whether Felix used excessive force on Sanchez in the jail. The court also did not prematurely accept the partial verdict, accepting the verdict only after the jury indicated it had been deadlocked for quite some time. The district court was entitled to take the practical step of accepting a partial verdict and did not abuse its discretion in doing so.

**E. Cumulative Error**

As a final argument, Sanchez maintains that, even if the errors at trial were individually harmless, their cumulative effect was harmful. It is true that errors that are harmless in isolation may, in the aggregate, become harmful. *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000). To show harm, a party must show that "the multiple errors so infected the jury's deliberation that they denied the [party] a fundamentally fair trial." *Id.* When considering whether there has been a cumulatively harmful effect, we "consider only plain errors or errors which were preserved for appellate review." *Id.* at 825.

Here, we have identified two errors as harmless: the jury instruction and the exclusion of the lockup keeper's notation. We are not convinced that these errors, taken together, altered the fate of the trial. As we have discussed, the district court would have to give the same jury instruction even if we were to reverse and remand. Consequently, the exclusion of the lockup keeper's notation did not make the instruction any less harmless. And given the testimony concerning Sanchez's in-

toxication at the time of his arrest, the instruction did not sig-nificantly affect the probative value of the notation made sev-eral hours later.  Therefore, there is no cumulative error.

### III.

In accordance with the foregoing, we conclude that the district court did not abuse its discretion in denying the mo-tion for a new trial. Accordingly, we AFFIRM.