In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3742 and 00-4073

RESEARCH SYSTEMS CORPORATION,

Plaintiff-Appellant,

v.

IPSOS PUBLICITE, IPSOS USA,
IPSOS, ET AL.,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 97 C 10--Richard L. Young, Judge.

ARGUED NOVEMBER 2, 2001--DECIDED January 9, 2002

Before POSNER, RIPPLE and EVANS, Circuit
Judges.

RIPPLE, Circuit Judge. The Plaintiff,
research systems corporation ("RSC"),
sued IPSOS S.A. and several of its
subsidiaries (collectively "IPSOS") for
breach of contract, misappropriation of
trade secrets (under Indiana and federal
law), constructive fraud and false
advertising. The district court entered
summary judgment for IPSOS on RSC's state
law misappropriation claim, and a jury
found for IPSOS on the rest of the
claims. RSC appeals the grant of summary
judgment, the entry of judgment against
it following the jury verdict, the denial
of its motion for a new trial, the denial
of a post-trial motion for sanctions
against IPSOS, and the granting of a
post-trial motion IPSOS made to recover
some of its expert witness fees from RSC.
For the reasons set forth below, we
affirm the judgment of the district court
in all respects.

I

BACKGROUND

A. Facts

RSC is an advertising research company.
It sells a product called "ARS

Persuasion," which is a system for testing the effectiveness of television commercials. In 1989, the French advertising research company IPSOS Publicite, a subsidiary of IPSOS S.A., approached RSC regarding a possible joint venture between IPSOS and RSC to market a testing system in France. IPSOS sold a testing system called Pre*Vision in France, but wanted to develop a new system to attract the business of Proctor & Gamble ("P&G").

Representatives of IPSOS and RSC began to negotiate seriously in September 1990. The presidents of IPSOS Publicite and IPSOS S.A. each signed a confidentiality agreement with RSC covering information that the companies would share. In December 1990, representatives of IPSOS visited RSC headquarters in Evansville, Indiana, and received a guided tour of the facility. During the visit, RSC furnished the IPSOS representatives with proposed joint venture and license agreements. The terms of the agreements were not acceptable to IPSOS, however, and the two companies were unable to reach any further agreement. RSC had been pursuing similar arrangements with other European advertising research companies as well, but there, too, could reach no final agreements. In early 1991, IPSOS and the two other European companies with which RSC had negotiated, Research Services Limited ("RSL") of the United Kingdom and the Sample Institute (Sample) of Germany, put together a joint proposal to RSC for the licensing of ARS Persuasion in Europe. RSC rejected theoffer, and negotiations between RSC and the European companies ended in August 1991.

By September 1991, IPSOS in collaboration with Sample had revised its Pre*Vision product to make it compatible with the RSL and Sample products used by P&G in the UK and Germany. RSC learned of the revised Pre*Vision in September 1991.

B.  District Court Proceedings

RSC filed suit in December 1996 in an Indiana state court for misappropriation of trade secrets and breach of contract. IPSOS removed the case to federal court in January 1997 and filed for partial summary judgment in March 1998 on the ground that the state law

misappropriation claims were time-barred. The court granted RSC's motion to delay its response until thirty days after discovery. In February 1999, the court permitted RSC to amend its complaint to add two new parties and claims of constructive fraud and false advertising and misappropriation under the Lanham Act. RSC sought permission to amend its complaint again in November 1999 to add more new parties and new claims, but the court denied the motion, explaining that more delay was not in the interest of justice. Over the course of discovery, each party filed numerous motions to compel. In June 1999, the court scheduled a trial date for April 3, 2000. In December 1999, the court ordered the parties to work out a discovery schedule that would lead up to the April 2000 trial. According to the schedule, on which the parties agreed, each party's witness lists and exhibits were to be disclosed by March 3, 2000, and IPSOS was to disclose its potential expert witnesses by March 17, 2000. Each party's disclosures were timely.

On March 17, 2000, RSC moved for a continuance, but the court denied the motion. It also moved the trial to April 4, reserving April 3 as a day to resolve any pending motions. On March 23 and 24, 2000, both parties made several motions in limine, including motions for sanctions, which the court rejected. On March 31, the court granted IPSOS' motion for partial summary judgment on the state law misappropriation claims, holding that the claims were time barred. RSC moved for a continuance of the trial on April 3. The court granted the motion, and moved the trial date to April 6. The jury returned a verdict for IPSOS on all claims, and the court entered judgment on the jury verdict for IPSOS. It denied RSC's motion for a new trial on September 15. RSC then filed another motion for sanctions, which the court denied. Finally, on October 24, 2000, the court granted IPSOS' motion to recover expert witness fees from RSC. RSC had deposed the proffered witnesses, but had refused to pay the witnesses' fees after IPSOS decided not to call them at trial.

II

DISCUSSION

A.

   RSC claims that IPSOS' pretrial conduct and the district court's denial of RSC's motions for continuances violated RSC's due process right to a full and fair trial. The crux of RSC's argument is that IPSOS purposefully delayed its delivery of discovery materials until the month before trial and that the delay interfered with RSC's ability to prepare for trial. RSC made two motions for continuances: the first on March 17, 2000, and the second on March 28, 2000. The district court summarily denied the first and reserved decision on the second until it could hear oral argument on the motion. The court granted a continuance, moving the trial date from April 4 to April 6, 2000, but RSC maintains that the two-day extension was inadequate.

   "We review the trial court's denial of a continuance for abuse of discretion." United States v. $94,000.00 in United States Currency, 2 F.3d 778, 787 (7th Cir. 1993). RSC carries a heavy burden, for "[t]he decision concerning whether to grant a continuance is left to the broad discretion of the district court." United States v. Withers, 972 F.2d 837, 845 (7th Cir. 1992). "Matters of trial management are for the district judge; we intervene only when it is apparent that the judge has acted unreasonably." N. Ind. Pub. Serv. Co. v. Carbon County Coal Co., 799 F.2d 265, 269 (7th Cir. 1986). The district court's rulings on RSC's motions for continuances were not unreasonable. The court ordered the parties to work out a schedule that would allow trial to proceed on the scheduled date. RSC and IPSOS agreed to the schedule, and the discovery materials that RSC complains of receiving only in the month before the trial were delivered timely according to that schedule. Nowhere in its brief does RSC claim that any discovery materials were produced late according to the agreed-upon schedule. Furthermore, the district court was aware of how long it had taken the case to get to trial and how many resources of the parties and the court it already had consumed. In denying RSC's November 1999 motion to file a second amended complaint,/1 which would have added another party to the litigation, the court noted:

The plaintiff's original complaint was

filed on December 16, 1996 . . . . . A trial date is set for April 3, 2000. Discovery has been extensive and extremely expensive. The parties have each exchanged 33,000 to 40,000 pages of materials and have filed numerous motions to compel. Depositions have required at least two and possibly three trips to Europe. There are contemplated depositions in South America. The plaintiff was previously granted leave to file a first amended complaint in July 1999.

R.322 at 2. Given that "district judges must be allowed considerable leeway in scheduling civil cases, and therefore in denying continuances that would disrupt their schedules," N. Ind. Pub. Serv. Co., 799 F.2d at 269, we cannot say that the district court abused its discretion in ruling as it did on RSC's motions for continuances./2

B.

RSC contends that the district court abused its discretion by denying its motion for sanctions for the "obstructive tactics" of defense counsel. The tactics, RSC claims, thwarted RSC's efforts to bring the case to trial and increased its cost of doing so. The district court did not abuse its discretion. "District courts possess wide latitude in fashioning appropriate sanctions," and this court will not disturb the decisions unless they are unreasonable. Johnson v. Kakvand, 192 F.3d 656, 661 (7th Cir. 1999). RSC agreed to the schedule according to which IPSOS made its pre-trial disclosures. It has not shown any misconduct on the part of IPSOS that would have been subject to sanctions. Thus, the district court's denial of RSC's motion was not unreasonable, and we shall not disturb it.

C.

RSC contends that the district court erred in granting IPSOS recovery of the expert witness fees. First, as the district court noted in its order, Federal Rule of Civil Procedure 26(b)(4)(A) permits a party to depose an expert whose opinion may be presented at trial. See Fed. R. Civ. P. 26(b)(4)(A). Rule 26(b)(4)(C) provides: "Unless manifest injustice would result, (i) the

court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision . . . ." Fed. R. Civ. P. 26(b)(4)(C). RSC deposed IPSOS' expert witnesses, and the court properly required RSC to pay for the costs of those depositions.

RSC alleges, however, that IPSOS never intended to call the experts at trial, and disclosed them just to distract RSC from its trial preparations and to burden RSC with the added expense of deposing the witnesses. RSC offers no specific evidence to support its allegations. Here, we would expect the trial judge--who is closer to, and more familiar with, the pre-trial actions of the parties--to have discovered any abuse that might not be apparent to us on the face of the record. Absent any indication of the scheme RSC attributes to IPSOS, the district court did not abuse its discretion in granting IPSOS' motion to recover the fees it incurred in making the experts available for RSC to depose.

D.

RSC next asks this court to reverse the district court's denial of RSC's motion for a new trial. A party seeking to reverse a district court's denial of a motion for a new trial "bears a particularly heavy burden." Lowe v. Consol. Freightways of Del., Inc., 177 F.3d 640, 641 (7th Cir. 1999). A motion for a new trial should succeed "[o]nly when a verdict is contrary to the manifest weight of the evidence . . . ." Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000). The district court, having seen the presentation of the evidence and observed the witnesses, "is in a unique position to rule on a new trial motion." Id. at 424. Thus, "[o]nly if the district judge has abused her discretion will we disturb her decision to deny a new trial." Id. This court will not overturn a jury verdict if a reasonable basis exists in the record to support it. See Jackson v. Bunge Corp., 40 F.3d 239, 244 (7th Cir. 1994). In reviewing the record, this court will not re-weigh the evidence; rather, we must view the evidence in the light most favorable to the prevailing party, IPSOS, and draw all reasonable inferences in its

favor. See Alverio v. Sam's Warehouse Club, Inc., 253 F.3d 933, 939 (7th Cir. 2001).

RSC ignores this standard of review. It does no more than point to some evidence and some inferences from the evidence that weigh in its favor. It makes no mention of the evidence supporting the jury's verdict. Viewing the evidence in the light most favorable to IPSOS, as we must, it is apparent that the jury's verdict is not against the weight of the evidence.

The jury made several specific findings that RSC now challenges. With respect to RSC's misappropriation claim, the jury determined that RSC had not disclosed any information regarding its product, ARS Persuasion, to IPSOS that was not generally known or readily ascertainable by proper means. The jury also found that IPSOS did not have access to any confidential or proprietary information of RSC. RSC contends that the evidence demonstrates otherwise. RSC submits that its employee, Jan Awad, provided IPSOS with RSC's "standard error formula" as a correction to IPSOS' formula. Even if the formula was given, however, RSC has not pointed to any evidence to show that the standard error formula was not readily ascertainable by proper means. Moreover, Awad was the only witness to testify about the formula and her testimony was vague and the jury was justified in not accepting it as sufficient to prove RSC's case. RSC also claims that IPSOS received secret information during the Operations Overview Tour that RSC provided of its facility. However, RSC has not invited our attention to any evidence in the record to show that the information provided on the tour consisted of trade secrets. The jury was entitled to believe IPSOS S.A. president, Didier Truchot, who testified that IPSOS representatives saw little more than the sight of people working in their offices. RSC simply did not prove this element of the claim.

The jury also found that IPSOS had independently developed Pre*Vision. RSC claims that this finding is inconsistent with the evidence that IPSOS developed Pre*Vision from methodologies developed by other European marketing firms. Whether IPSOS borrowed from other European companies is irrelevant to the

question of whether IPSOS misappropriated RSC's trade secrets. The issue was whether IPSOS had developed Pre*Vision independently of RSC's information. Carlos Harding, the IPSOS executive responsible for revising Pre*Vision, testified that IPSOS developed Pre*Vision from information derived from IPSOS' interactions with other European companies and with its clients. The jury was entitled to believe him.

With respect to RSC's constructive fraud claim, the jury found that RSC was not in a weaker negotiating position than IPSOS and that RSC did not rely on any misrepresentations by IPSOS. RSC claims that the evidence does not support the jury's determination. "Constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship." Estates of Kalwitz v. Kalwitz, 717 N.E.2d 904, 913 (Ind. Ct. App. 1999). The only evidence RSC cites to support its claim that IPSOS was in a dominant position are letters from RSC asking IPSOS for information on the European marketplace, indicating that it knew less than IPSOS about the European marketing research industry. The jury heard evidence, however, that IPSOS was a small company at the time of the negotiations and that RSC had alternative plans if its negotiations with IPSOS fell through, indicating that RSC was not dependant upon any cooperative venture with IPSOS. Thus, the jury's finding that RSC had failed to prove a necessary element of its claim is not against the weight of the evidence.

Turning to its false advertising claim, RSC challenges the jury's findings that IPSOS never had offered Pre*Vision for sale in the United States and that IPSOS had not misrepresented the nature, characteristics, qualities or origin of Pre*Vision. Under the Lanham Act, which generally proscribes the false description of goods and their origins, the plaintiff must show, among other things, that the defendant made false or misleading statements concerning goodsentering interstate commerce. See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp., 168 F.3d 967, 971 (7th Cir. 1999). We need not decide whether the evidence supports the jury's determination that IPSOS did not place Pre*Vision in

interstate commerce because the jury's finding that IPSOS did not misrepresent the nature, characteristics, qualities or origin of Pre*Vision is consistent with the weight of the evidence. In this respect, RSC focuses on IPSOS' claim in its Pre*Vision marketing material that the revised Pre*Vision was developed in part from experience supplying P&G with "O.R.S.," a product that the German company, Sample, had been supplying to P&G in the late 1980s. RSC argues that Pre*Vision could not have been developed from experience supplying P&G with O.R.S. because IPSOS was not a supplier of O.R.S. at the time the revised Pre*Vision was developed between March and July 1991. As RSC admits, however, IPSOS developed the revised Pre*Vision in collaboration with Sample. Thus, because Sample had supplied O.R.S. to P&G and had collaborated on the development of the revised Pre*Vision, the jury could have reasonably concluded that IPSOS made no misrepresentation.

Finally, RSC urges that the evidence does not support the jury's verdict for IPSOS on RSC's breach of contract claim. IPSOS and RSC signed a confidentiality agreement whereby each party promised not to disclose the information shared with the other. The agreement explicitly excepted information that "(i) was earlier known to the receiving party; (ii) is or becomes known to the public other than through disclosure by the receiving party; or (iii) is disclosed to the receiving party by a third party having a right to disclose such information." Plaintiff's Trial Exs. Vol.VII at 1013. The jury found that RSC had not disclosed any information regarding its product to IPSOS that was not generally known or readily ascertainable by proper means. That finding, as discussed above, was not against the weight of the evidence. Thus, the jury found that whatever information IPSOS had received from RSC was within the exception to the confidentiality agreement. Therefore, the verdict in favor of IPSOS on RSC's breach of contract claim was not against the weight of the evidence, and the district court did not err in denying RSC's motion for a new trial.

E.

RSC takes issue with five separate rulings by the district court on the admissibility of certain evidence. This court reviews a district court's evidentiary rulings for an abuse of discretion. See United States v. Smith, 230 F.3d 300, 307 (7th Cir. 2000). Even if a ruling is erroneous, it will not be overturned unless it is likely that the ruling had "a substantial influence over the jury." Palmquist v. Selvik, 111 F.3d 1332, 1339 (7th Cir. 1997) (internal quotation omitted).

First, RSC challenges the district court's exclusion of two memoranda written by Jan Awad describing meetings with IPSOS. RSC sought to have the documents admitted into evidence, but the district court excluded them as hearsay because they were offered for the truth of the matter asserted in the memos. RSC contends that the memos should have been admitted as past recollections recorded. Federal Rule of Evidence 803(5) permits recorded past recollections to be read into evidence, but not to be received into evidence as exhibits unless offered by an adverse party. See Fed. R. Evid. 803(5). RSC sought to introduce the memoranda as substantive exhibits, something the rule explicitly prohibits. The district court did not abuse its discretion in excluding the memoranda.

RSC next challenges the admission of an IPSOS document, which purported to be a P&G document describing market tests being done in Germany. IPSOS sought toadmit the document as evidence of information in the possession of IPSOS' Mr. Harding, the executive responsible for revising Pre*Vision, and upon which he relied in developing the revised Pre*Vision. The court admitted the document for the limited purpose of showing "that Mr. Harding had it--this document in his file." Tr.V at 1027. RSC claims that the court erred by not requiring IPSOS to establish that the document was authored by P&G. A document is authenticated if the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). IPSOS only claimed that it "was a document that was in [Mr. Harding's] file and that he had it available to him when the changes [to Pre*Vision] were made." Tr.V at 1025. Whether the document was actually from

P&G was irrelevant, so long as the document was not from RSC, and RSC never claimed that it was. Thus, the district court did not err in admitting the document.

Next, RSC challenges the sufficiency of certain limiting instructions pertaining to the admission of exhibits concerning other market testing systems. IPSOS sought to introduce the exhibits as evidence that IPSOS had substantial non-RSC information on which to rely in developing its revised Pre*Vision. At sidebar, the court agreed to instruct the jury that the exhibits would not be admitted for the truth of the matter asserted in them, but just as evidence of other information on which IPSOS could have relied. The court may have instructed the jury improperly, because the transcript reads that "it's being offered for the truth." Tr.V at 1014. But any error was harmless because the nature of the testing systems described in the exhibits was irrelevant. What mattered was that IPSOS had still other sources of information on which to rely in developing its own system.

RSC argues that the district court erred in allowing Roger Flechsig, an executive of an IPSOS subsidiary corporation, to testify even though he had not been disclosed as a potential expert witness. IPSOS properly had disclosed Flechsig as a lay witness it would call at trial. RSC objected to Flechsig's testimony that RSC's product, ARS Persuasion, was not unique in the industry. A non-expert witness may give his opinion if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 701. Here, Flechsig's opinion was rationally based on his twenty years of experience as a competitor of RSC. In any event, even if his opinion was based on the specialized knowledge of an expert, the single comment that ARS Persuasion was not unique could not have affected the outcome of the trial.

Finally, RSC claims that the district court erred by admitting Exhibits 41 and 83. Exhibit 41 was a portion of a report

on the results of an advertising test performed by Burke Marketing, a competitor of RSC, using Burke's Selector product. Exhibit 83 consisted of some materials that would have been included in the test that is mentioned in the Exhibit 41 report. IPSOS offered the exhibits to show that ARS Persuasion was not unique. RSC objected to the admission of the exhibits on the ground that IPSOS had not laid a proper foundation. Federal Rule of Evidence 901(b)(1) provides that an exhibit may be authenticated by testimony of a witness with knowledge that "a matter is what it is claimed to be." Fed. R. Evid. 901(b)(1). Flechsig testified that he had been responsible for the marketing and sale of the Burke Selector product. Therefore, the district court was not unreasonable in concluding that Flechsig was qualified to testify, as he did, that Exhibit 41 was "a true and accurate copy of an excerpt from a Burke Selector report," Tr.XIII at 2434, and that Exhibit 83 consisted of materials that would have been included in a Selector test. The district court did not abuse its discretion in admitting Exhibits 41 and 83.

F.

  The district court granted summary judgment for IPSOS on RSC's Indiana Uniform Trade Secrets Act ("UTSA") claim on the ground that the statute of limitations had run. RSC does not dispute that it learned of the purported misappropriation in October 1991 and filed its claim in 1996. The UTSA provides for a three-year limitations period on misappropriation claims. See Ind. Code sec. 24-2-3-7. Indiana tolls all of its limitations periods, however, for "[t]he time during which the defendant is a nonresident of the state [and does not] maintain in Indiana an agent for service of process or other person who, under the laws of Indiana, may be served with process as agent for the defendant." Ind. Code sec. 34-11-4-1. IPSOS never has been a resident of Indiana, nor maintained an agent or anyone else for service of process there. At first glance, it might appear that the limitations period for RSC's claim against IPSOS is tolled. The Court of Appeals of Indiana has held, however, that the Indiana tolling provision does not apply "where the party claiming the

benefit of the period of limitations was subject to the jurisdiction of a court in [the] state." Haton v. Haton, 672 N.E.2d 962, 965 (Ind. Ct. App. 1996). Based on Haton, the district court held that RSC's claim was time-barred because the UTSA limitations period was not tolled because RSC could have served IPSOS under Indiana's long arm statute when it discovered the misappropriation. RSC urges this court to reject the holding of the Court of Appeals of Indiana in Haton, at least as it applies to defendants residing in foreign countries, because of the added burden involved in serving parties abroad.

Because the district court was sitting in diversity, that court, and this court on review, must attempt to predict how the Supreme Court of Indiana would decide this issue. See Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087, 1090 (7th Cir. 1999). "Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." Id. The Court of Appeals of Indiana held in Haton that "a statute tolling the running of a period of limitations does not apply where the party claiming the benefit of the period of limitations was subject to the jurisdiction of a court in that state." Haton, 672 N.E.2d at 965. The court in Haton was persuaded by the rationale of the Michigan Court of Appeals, which noted, "The purpose of a tolling provision is to protect the right of a plaintiff to bring an action and to prevent a defendant from defeating a claim by absenting himself from the jurisdiction. It preserves [the] plaintiff's claim until such time as service on the defendant is made available." Id. at 964 (quoting Frazier v. Castellani, 342 N.W.2d 623, 626 (Mich. Ct. App. 1983)). When a defendant is amenable to service, application of the tolling provision would serve no purpose, and the court should instead apply the statute of limitations, which is "designed to promote diligence on the part of the plaintiff, to prevent the litigation of stale claims and to establish a reasonable, but limited, time for bringing an action." Id. Haton, however, involved a suit for delinquent child support payments following a

divorce decree. Unlike here, the court in Haton had continuing jurisdiction over the defendant; service of process was not necessary, only notice of the relief sought. See id. at 964-65. In the present action, the district court extended the ruling of Haton from cases against nonresident defendants over whom the court already had jurisdiction to cases against nonresident defendants over whom the court must yet establish its jurisdiction. Still, the rule's rationale applies here as well, and its application would be consistent with Indiana law.

   Indiana's tolling provision does not apply in cases against defendants who "maintain in Indiana an agent for service of process or other person who, under the laws of Indiana, may be served with process as agent for the defendant." Ind. Code sec. 34-11-4-1. Indiana law used to permit service to be made upon the Secretary of State in actions against nonresident corporations. See Ind. Code sec. 23-3-3-1 (1982). In such cases, the tolling provision did not apply because the nonresident corporation was amenable to service of process via the Secretary of State. See Tolen v. A.H. Robins Co., Inc., 570 F. Supp. 1146, 1154-55 (N.D. Ind. 1983); Dague v. Piper Aircraft Corp., 513 F. Supp. 19, 24 (N.D. Ind. 1980); see also Am. States Ins. Co. v. Williams, 278 N.E.2d 295, 301 (Ind. Ct. App. 1972) (when nonresident motorist was amenable to service via the Secretary of State pursuant to the nonresident motorist statute, the statute of limitations was not tolled). The statute that allowed service of process to be made on the Secretary of State in actions against nonresident corporations has been repealed and replaced by the long-arm statute under which IPSOS could be served by registered or certified mail. See Ind. Code sec. 23-1-49-10; 1986 Ind. Acts 149, sec.sec. 33, 65. Thus, the rule that the statute of limitations is not tolled if the nonresident defendant is amenable to service of process under the long-arm statute is consistent with Indiana law interpreting the tolling provision, even though the statute itself does not explicitly provide for the exception. Courts in many other states have applied the same exception to tolling statutes under the rationale observed in Haton, even though the statutes did not explicitly provide for it. See, e.g.,

Alday v. Tecphy Div. Firminy, 10 F. Supp. 2d 562, 565 (D.S.C. 1998) (applying South Carolina law); Fernon v. Itkin, 476 F. Supp. 1, 3 (M.D. Fla. 1979) (applying Florida law), aff'd without op. 604 F.2d 669 (5th Cir. 1979); Kennedy v. Lynch, 513 P.2d 1261, 1263 (N.M. 1973); Byrne v. Ogle, 488 P.2d 716, 718 (Alaska 1971); see also Kenneth J. Rampino, Annotation, Tolling of Statute of Limitations During Absence from State as Affected by Fact that Party Claiming Benefit of Limitations Remained Subject to Service During Absence or Nonresidence, 55 A.L.R.3d 1158, sec. 4[b] (1974 & Supp. 2000) (listing cases). Lastly, the Supreme Court of Indiana itself has embraced the rationale underlying the rule applied by the district court, albeit in dicta and over a century ago. Interpreting a tolling statute that did not explicitly provide for an exception when the defendant was amenable to service of process, the Court stated: "It seems that the absence of the defendant, contemplated in this section of the statute, must be such as would prevent the plaintiff, during its continuance, from enforcing his cause of action by a judgment in personam, against the defendant." Niblack v. Goodman, 67 Ind. 174, 1879 WL 5577, at *12 (Ind. 1879). Its reasoning applies with no less force today.

RSC distinguishes its case from Haton by noting that IPSOS was not just outside the state of Indiana, it was outside the United States. The rule in Haton should not apply here, RSC argues, because of the added burden involved in serving parties in foreign countries. But Indiana law makes no distinction between defendants based in the United States and those based in foreign countries. The manner of service is the same: by simple certified mail, see Ind. Code sec. 23-1-49-10; Ind. R. Trial P. 4.1(A)(1), 4.4(B)(1), 4.6(B), a method permitted by Article 10(a) of the Hague Convention, so long as the foreign country does not object. See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Feb. 10, 1969, 20 U.S.T. 361, 658 U.N.T.S. 163. France has not objected. See id., Article 21 & n.7./3 That IPSOS could be served only in France does not render it unamenable to service, and the tolling statute should not apply. See

Alday, 10 F. Supp. 2d at 565 (when defendant was amenable to service of process under the Hague Convention, tolling provision did not apply). The district court's application of the Haton rule in this case is consistent with Indiana law, and RSC has not pointed us to persuasive indications showing that the Supreme Court of Indiana would decide the issue differently. Therefore, the district court did not err in granting summary judgment for IPSOS.

Conclusion

The judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 The district court's ruling denying leave to file a second amended complaint is not contested on appeal.

/2 RSC submits that the timing of IPSOS' disclosures prevented it from adding another party, RSL, to the action. However, as the district court noted in denying RSC's motion to file a second amended complaint that would have added RSL to the suit, RSC had notice that RSL might be using its purported trade secrets as early as June 14, 1996.

/3 The Hague Convention is appended to Federal Rule of Civil Procedure 4. See Fed. R. Civ. P. 4, conventions.