KRUSE, INC., d/b/a Kruse
International,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 1:99–CV–428.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 24, 2002.

Donald A. Tabbert, Chad T. Walker, Tabbert, Hahn, Earnest & Weddle, LLP, Indianapolis, IN, for plaintiff.

Deborah M. Leonard, U.S. Attorneys Office, Fort Wayne, IN, Craig Weaver, U.S. Dept. of Justice, Tax Division, Washington, DC, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on the "United State's Motion for Judgment Notwithstanding the Verdict and, in the Alternative, for New Trial" which was filed on March 21, 2002. Kruse, Inc., d/b/a Kruse International filed a response to the motion on April 15, 2002, to which no reply has been filed. For the following reasons, the motion for judgment notwithstanding the verdict [1] and/or for a new trial will be denied.

---

1. Technically, the motion should be titled as one for judgment as a matter of law instead of

### Factual Background

This action began when Kruse, Inc. d/b/a Kruse International failed to file with the Internal Revenue Service informational returns regarding cash transactions over $10,000. Specifically, the Internal Revenue Service claimed that Kruse intentionally failed to file the forms with respect to some 52 transactions. The parties agreed to try one of the transactions before a jury.

A jury trial was held from March 5 through 7, 2002. The jury returned a verdict in favor of the plaintiff.

The facts proved at trial can be briefly summarized as follows. Plaintiff is an Indiana corporation which is engaged primarily in the auction of automobiles. It was so engaged in that trade or business at all relevant periods of this lawsuit, namely 1989 through 1992. During that same relevant time period, Dean Kruse was the Chief Executive Officer and Michael Butler was the Vice President and Director of Operations.

At its auctions, plaintiff would accept cash or currency, among other forms of payment. The Internal Revenue Service requires that a corporation file a Form 8300 return with the IRS for each transaction or related transaction where the corporation receives more than $10,000.00 in cash. This is an informational return.

There was overwhelming evidence that, from early-on, Dean Kruse truly believed that the Kruse organization was not required to file the Form 8300s because it was in the business of auctioning cars. In fact, the uncontroverted evidence showed that he relied upon the advice of Larry Kuhn, the Kruse organization's accountant who expressed the belief that Kruse was not required to file the Form 8300s due to the nature of its business.

On December 4, 1990, Agent Frank Monaghan of the Internal Revenue Service had a telephone conversation with Michael Butler who was at plaintiff's offices in Auburn, Indiana.[2] Butler told Monaghan that "we"[3] had reviewed the reporting requirements of cash transactions. Butler also suggested that Monaghan give plaintiff payments in increments of less than $10,000.00.

On December 8, 1990, Gary Bohannon purchased two automobiles at one of plaintiff's auctions. Bohannon paid a total of $12,750.00 in cash for the automobiles. Plaintiff did not file a Form 8300 for this transactions. This was the transaction with which the jury was presented. Additionally, there were 51 other transactions from December 1990 to April 1992, each of which involved over $10,000 in cash and for none of which was filed a Form 8300.

Some time in late May or early June 1992, a meeting was held at plaintiff's place of business where the Form 8300 was discussed. Dean Kruse decided at that meeting that plaintiff was required to file a Form 8300 when it received over $10,000.00 in cash. Nevertheless, plaintiff did not file a Form 8300 for any transaction in which it had previously received over $10,000.00 in cash.

---

.as one for judgment notwithstanding the verdict. *Alverio v. Sam's Warehouse Club, Inc.,* 253 F.3d 933, 938 fn. 1 (7th Cir.2001).

**2.** Obviously, Monaghan did not introduce himself in his capacity as a government agent.

**3.** While the government argues the "we" meant Butler and Dean Kruse had discussed the Form 8300, a proper characterization given the evidence presented to the jury was that the term "we" was used in a generic way since nothing but speculation supports the conclusion that the "we" included Dean Kruse.

Subsequently, at three different auctions, plaintiff posted signs in which it notified prospective purchasers that it would be filing Form 8300 in the future for cash transactions over $10,000.00. On July 1, 1992, the Internal Revenue Service went to the Kruse place of business and seized its books and records.

### Application of Law

As indicated at the outset, the government has moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. With regard to the motion for judgment notwithstanding the verdict, the government asserts that plaintiff intentionally disregarded the filing requirements for the Form 8300 and hence the jury's verdict was erroneous. As for the request for a new trial, the government asserts that one is necessary because the plaintiff was allowed to introduce and argue irrelevant and prejudicial evidence to the jury. Those arguments will be considered in turn.

### A. *Judgment Notwithstanding the Verdict*

In deciding whether to grant a motion for judgment as a matter of law, the court "must view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed." *Deimer v. Cincinnati Sub–Zero Products,* 58 F.3d 341, 343–44 (7th Cir.1995). "A mere scintilla is not enough.... Once the plaintiff prevails before the jury, [its] method of proof at trial is irrelevant; [the court] simply ask[s] whether the jury's verdict [for plaintiff] could be sustained on the whole record." *Willis v. Marion County Auditor's Office,* 118 F.3d 542, 545 (7th Cir.1997). In sum, this Court's job is " 'limited to assessing whether no rational jury could have found for the plaintiff' " and "[i]n doing so, 'this

court may not step in and substitute its view of the contested evidence for the jury's.' " *Mathur v. Board of Trustees of Southern Illinois University,* 207 F.3d 938, 941 (7th Cir.2000) (citations omitted); *see also, Collins v. Kibort,* 143 F.3d 331, 335 (7th Cir.1998).

As the government points out, the failure to file a Form 8300 when required can result in the imposition of a penalty. Specifically, the Internal Revenue Code provides:

> (a) Imposition of penalty.—
>
> (1) In general.—In the case of a failure described in paragraph (2) by any person with respect to an information return, such person shall pay a penalty of $50 for each return with respect to which such a failure occurs, but the total amount imposed on such person for all such failures during any calendar year shall not exceed $250,000.
>
> (2) Failures subject to penalty.—For purposes of paragraph (1), the failures described in this paragraph are—
>
> (A) any failure to file an information return with the Secretary on or before the required filing date, and
>
> (B) any failure to include all of the information required to be shown on the return or the inclusion of incorrect information.

21 U.S.C. § 6721(a). Here, the government contends that because plaintiff intentionally failed to file a Form 8300 for the Bohannon transaction and further because it failed to file Form 8300 for the other 51 transactions after it became aware of the filing requirements, the government is entitled to judgment entered in its favor.

The thrust of the government's argument relating to the Bohannon transaction is recited in its brief as follows:

> The United States proved that at least one officer of plaintiff, Michael Butler, was aware of the filing requirements of the Form 8300 on December 4, 1990

when he discussed the filing requirements with IRS Agent Frank Monaghan. Plaintiff subsequently failed to file a Form 8300 when it received over $10,000 in cash from Gary Bohannon on December 8, 1990. Based on Agent Monaghan's testimony and the admissible portion of the transcript, no reasonable juror could conclude that on December 4, 1990, Michael Butler was not aware that the filing requirements applied to plaintiff. As an officer of plaintiff, a corporation which acts solely through its agents, Butler's knowledge is plaintiff's knowledge. Therefore, as a matter of law, plaintiff's failure to file the Form 8300 for the Bohannon transaction was intentional and the United States is entitled to a judgment notwithstanding the verdict.

Rec. 141, pp. 4–5. There are at least a couple of problems with the government's argument on this score.

■■■ First, contrary to the government's assertion, merely because Butler may have been aware of the filing requirements for the Form 8300, it does not follow perforce that the Kruse corporation would be imputed with that knowledge. True, as the government argues, a corporation acts only through its agents. However, to hold a corporation responsible, more is required than simply that a person in the corporation may have known something. As the jury was instructed in this case: "A corporation can act only through its agents, officers, shareholders and employees. A corporation is responsible for the acts or statements of such individuals only to the extent that the acts or state-ments are made within the scope of that individual's authority." Court's Instruction No. 16. That is a correct statement of the law. *See, Mid–Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.,* 715 N.E.2d 906, 909 (Ind.App.1999) ("It is well established that the actions of employees and agents of a corporation are attributable to the corporation when the actions are done within the scope of employment."); *United States v. One Parcel of Land,* 965 F.2d 311, 316 (7th Cir.1992) ("Only knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation.").

Viewed in this light, the jury could very well find in favor of Kruse, Inc., even given Butler's statements to Monaghan since it could easily determine that Butler had no authority to bind the corporation. His title aside, Butler indicated that he was did not have accounting functions and was not responsible for taxes. He was strictly in charge of operations (the purchasing and maintenance of property) and followed other's people's orders and directive. He was not a decisionmaker but instead was responsible for carrying out the instructions given to him by Dean Kruse (who was the ultimate decisionmaker) and/or Mitchell Kruse.[4] Hence, despite the gloss that the government would like to place on the word "we" which Butler used in his conversation with Monaghan, the jury could readily conclude that Dean Kruse was not aware of the Monaghan proposal when Butler used the "we" word and that Butler could not bind the corporation in any event.[5]

---

4. In fact, at one point Butler indicated that he had a meeting with Dean Kruse wherein Dean Kruse told him to change toilet paper because it was not up to Dean Kruse's specifications and that "[t]hat's the kind of stuff I did."

5. Quite apart from the issue of agency, the conversations between Butler and Monaghan may not have been as damning as the government attempts to assert, or at least a jury reasonably could have so found. According to Butler, he looked at the Form 8300 because what Monaghan was proposing was a

Second, the issue in this case related to the Bohannon transaction and whether the plaintiff intentionally failed to file the Form 8300. There was a plethora of evidence from which the jury could conclude that plaintiff did not intentionally disregard the filing of the form including testimony that Dean Kruse, Mitchell Kruse and Michael Butler were not even at the closing of the Bohannon transaction. Bohannon himself indicated that there was no intent to disregard the filing requirements by telling the jury that he was not trying to conceal anything with the money he used to purchase the automobiles; he was not trying to keep the government from knowing that he paid cash for the cars; he frequently paid cash in the course of his business dealing; he never thought about or suggested that Kruse file a Form 8300 for the transaction; and that he never talked to the Kruse people about the Form 8300. More generally, the evidence suggested that everything was kept out in the open regarding the auction process and the keeping of records and the identity of buyers was never hidden. Further, the jury received a stipulation in which it was indicated that Kruse was depositing all of their cash in banks and that the banks routinely, as was required by law, sent Currency Transaction Reports to the Internal Revenue Service within fifteen days of the transactions. Such evidence belies any motive for the Kruse organization to protect Bohannon from this cash transaction and supports a conclusion, which the jury apparently found, that Kruse did not intentionally disregard the Form 8300 filing requirements but instead, as Dean Kruse indicated, did not file such a form because it was his belief that as an auction company Kruse did not need to file the form.[6]

Apart from the foregoing, defendant further asserts that it is entitled to judgment notwithstanding the verdict because the plaintiff failed to file a Form 8300 informational return for any of the 52 transactions. Its argument on this score is set out in its brief as follows:

> Alternatively, even given plaintiff's proffered argument why its failure to file was unintentional, the United States is entitled to judgment as a matter of law. Dean Kruse, Mitchell Kruse and Maurice Bartlett all testified at trial that they had a meeting in May of 1992 where the Forms 8300 were discussed. They all admitted that after that meeting there was no question in anyone's mind that plaintiff was required to file the Forms 8300 for cash transactions where it received over $10,000 in cash. They also testified that plaintiff kept detailed records which showed 52 transactions where it received over $10,000 in cash during the previous eighteen months. Yet plaintiff, admitting it knew of its obligation to file, continued in its failure to file the returns for the transactions which occurred prior to the date it admits it knew it was required to file.

Rec. 141, p. 5.

It is true, as the government points out, that the Code of Federal Regulations sets forth facts and circumstances which may be considered in determining whether a failure to file is due to an intentional disregard. Specifically, the regulations provide:

new type of business deal that Kruse had never done before or since.

6. Tellingly, Butler, who had been fired by the Kruse organization nevertheless testified that he felt that Dean Kruse believed at the time that the Form 8300 did not apply to Kruse International. Jeffrey Doner who testified for the government also indicated that he thought Kruse honestly believed that the Form 8300 did not apply to Kruse.

(3) Facts and circumstances considered. The facts and circumstances that are considered in determining whether a failure is due to intentional disregard include, but are not limited to—

(i) Whether the failure to file timely or the failure to include correct information is part of a pattern of conduct by the person who filed the return of repeatedly failing to file timely or repeatedly failing to include correct information;

(ii) Whether correction was promptly made upon discovery of the failure;

(iii) Whether the filer corrects a failure to file or a failure to include correct information within 30 days after the date of any written request from the Internal Revenue Service to file or to correct; and

(iv) Whether the amount of the information reporting penalties is less than the cost of complying with the requirement to file timely or to include correct information on an information return.

26 C.F.R. § 301.6721–1(a)(3).

What is not true, as the government tries to suggest, is that the language in the above-cited regulation that "whether correction was promptly made upon discovery of the failure" means a failure to file past returns upon discovery that returns should have been filed is conclusive proof of an intentional disregard.[7] Indeed, the cited regulations belie that suggestion by providing that that is among any of a number of factors which may be considered in concluding that a failure to file was due to an intentional disregard. In this case, the jury was properly instructed in Court's instruction number 17 that "[a] determination of intentional disregard requires a consideration of all factors regarding the filing of the form."

In sum, there was overwhelming evidence provided to the jury which could lead it to conclude that Kruse did not intentionally disregard filing the Form 8300.[8] In fact it would have been quite surprising had the jury returned with any other verdict given the repeated evidence that showed Dean Kruse and his organization firmly believed that the Form 8300s did not apply to the auction business and the veritable dearth of evidence from the government which would have supported a finding of an intentional disregard. That being the case, the government is not entitled to judgment as a matter of law and

---

7. In its brief, the government asserts that the failure of the Court to include the language from the Code of Federal Regulations in the Court's instructions entitles it at a minimum to a new trial. That argument must be rejected because the jury was in fact told that it should consider all factors in determining whether the failure to file was intentional. The government raised the specter that it was entitled to judgment as a matter of law at the close of the case because of evidence which showed Kruse never chose to file the Form 8300 for any of the 52 transactions after May 1992 when it by then knew that the Form applied to auction houses. As the Court pointed out at that time, this was an issue which should have been raised long before by way of motion for summary judgment so that it could be adequately considered and briefed. Moreover, this Court has scoured the government's present brief and finds no legal support for the notion that the mere failure to subsequently file the Form 8300 means that as a matter of law Kruse intentionally disregarded the filing requirements.

8. In its brief, the government makes much of the fact that at several auctions after June 1992, plaintiff posted signs about the requirement of filing Form 8300s. Since this was not required by the Internal Revenue Service, the government posits that this was some sort of evidence of motive for why plaintiff failed to file the past-due Form 8300s. This is nothing but speculation on the part of the government. More importantly, there was simply no evidence that at any time plaintiff attempted to protect any of the 52 buyers or, more pertinently, Bohannon.

hence is misnamed motion for a judgment notwithstanding the verdict will be denied.

## B.  Motion for a New Trial

As an alternative to its request for judgment notwithstanding the verdict, the government asserts that it should be granted a new trial.  Its basis for this is essentially that the jury heard prejudicial and irrelevant testimony relating to the non-compliance rates for filing Form 8300s and that it heard about the amount of assessments which could be imposed for the other 51 transactions.  The government has failed to carry its burden in requesting a new trial.

A party seeking a new trial "bears a particularly heavy burden ...".  *Lowe v. Consolidated Freightways of Delaware, Inc.*, 177 F.3d 640, 641 (7th Cir.1999).  "A motion for a new trial should succeed '[o]nly when the verdict is contrary to the manifest weight of the evidence ...' " *Research Systems Corp. v. IPSOS Publicite*, 276 F.3d 914, 920 (7th Cir.2002).  Because the district court has "seen the presentation of the evidence and observed the witnesses, [it] 'is in a unique position to rule on a new trial motion' " such that the district court's conclusion will be reviewed for an abuse of discretion and hence the denial of a motion for a new trial will not be overturned unless there is no reasonable basis in the record to support the jury verdict.  *Id.* (citations omitted).  In short, "[o]nly when a verdict is contrary to the manifest weight of the evidence should a motion for a new trial challenging the jury's assessment of the facts carry the day."  *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir.2000).

■ The government argues that this Court erred in allowing plaintiff to introduce evidence which suggested that 75% to 80% of business which were required to file the Form 8300s in 1990 were not doing so. It asserts that such evidence was not material to the issue of plaintiffs non-compliance and offers the following analogy: "a plaintiff is not allowed to offer evidence that 75% to 80% of Americans speed on American highways, when the only issue is whether the plaintiff was speeding." (Rec. 141, p. 7).

As the plaintiff asserts, however, the government's analogy is flawed.  Virtually everyone of driving age in the United States knows that it is illegal to speed, whereas the evidence presented to the jury showed that very few people in the United States had knowledge of the Form 8300, when it was to be filed, or the specifications regarding its filing.  In fact, there was evidence introduce which showed that due to noncompliance the Internal Revenue Service was offering seminars about the Form 8300 in an effort to bring businesses into compliance.

That aside, the evidence relating to noncompliance was not irrelevant as the government argues.  The issue was whether Kruse *intentionally* disregarded its obligation to file the Form 8300 and the evidence about noncompliance was relevant to show that there was mass confusion and uncertainty about the application of the law.  Hence, evidence about the compliance rates of companies in general was relevant to the determination of whether Kruse, Inc. intentionally disregarded filing of the Forms 8300 since it went to the state of mind of Kruse and its misunderstanding, along with numerous other companies, about the applicability of the law.

The government also asserts that the introduction of noncompliance was prejudicial as well.  Even assuming there may have been some prejudice from the introduction of that evidence, the fact remains that there was other overwhelming evidence from which the jury could reasonably conclude that the Kruse organization did not intentionally disregard the filing

requirements relating to the Form 8300s. Any perceived prejudice was more than vitiated by the plethora of other evidence which supported the jury's verdict.

 Finally, the government contends that it is entitled to a new trial because of the evidence which was introduced relating to the 51 transactions other than the Bohannon transaction. The upshot of its argument on this score is that it was entitled to argue about the 51 non-Bohannon transactions in order to show a pattern but that the plaintiff could not argue about the enormous assessment (in excess of $1.8 million) which might accrue with respect to those transactions.

The government's argument is without merit if for no other reason than the evidence from both sides clearly referred to all of the transactions and the jury was informed that for each transaction $25,000 was involved. Undoubtedly, the jury could do the math and determine that 52 times $25,000 would be a significant amount of money. Moreover, if as the government asserts, it could use the fact of the 52 transactions to show a pattern which would go towards supporting its claim that the plaintiff intentionally disregarded the filing requirements for the 8300s, it seems just as proper that plaintiff should have been allowed to show what the impact of those failures to comply would be since it would tend to suggest no real reason that the Kruse organization would want to sustain that type of liability for failure to report transactions, particularly in light of the fact that there was absolutely no evidence to suggest that it did so in an effort to conceal the identity of the purchasers or that it was in cahoots with the purchasers to keep their identities unknown.

### Conclusion

On the basis of the foregoing, the "United State's Motion for Judgment Notwithstanding the Verdict and, in the Alternative, for New Trial" which was filed on March 21, 2002 is DENIED.