**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**PREFERRED MANAGEMENT CORPORATION, et al., Defendants.**

**IP 98–1697–C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 20, 2002.

See also 216 F.Supp.2d 763.

Jo Ann Farnsworth, Equal Employment Opportunity Comm, Indianapolis, IN, for plaintiff.

Daniel C. Emerson, Bose McKinney & Evans, Indianapolis, IN, for defendants.

### ENTRY ON DEFENDANT'S RULE 50 AND RULE 59 MOTIONS

BARKER, District Judge.

In this Entry we address two of defendant's post-trial motions: its Renewed Motion for Partial Judgment on the Evidence and in the Alternative for a New Trial; and its Motion for New Trial. For the following reasons, we DENY both of defendant's motions.

#### I. *Discussion.*

A. *Defendants' Motion for Judgment as a Matter of Law or New Trial.*

We construe defendant's Motion for Partial Judgment on the Evidence and in the

Alternative for a New Trial to be a Rule 50(b) motion renewing its motion for judgment as a matter of law. Federal Rule 50(b) permits a party to renew its Rule 50(a) motion asking for judgment as a matter of law and to file at the same time an alternative motion for a new trial pursuant to Rule 59.[1] ·We may grant a motion for judgment as a matter of law only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). Since we review the evidence to determine only whether it is legally sufficient to have supported the jury's verdict, the evidence need only have been "substantial," or more than "a scintilla." *Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir.2001); *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 545 (7th Cir. 1997). We draw all inferences from the evidence in a light reasonably most favorable to the verdict. *Id.; Cygnar v. City of Chicago*, 865 F.2d 827, 834 (7th Cir.1989).

▪ We may grant a renewed motion for judgment as a matter of law only on issues raised with sufficient specificity in the moving party's Rule 50(a) motion. In other words, the party moving for judgment as a matter of law under Rule 50(b) ordinarily waives its right to seek relief if it has not first filed a motion under Rule 50(a). *Savino v. C.P. Hall Co.*, 199 F.3d 925, 931 (7th Cir.1999) ("A party who wants to challenge the propriety of submitting a given claim or defense to the jury is obliged to make a motion under Fed.

R.Civ.P. 50(a) at some time prior to the submission of the case to the jury. Failure to make such a motion waives the sufficiency of· the evidence point on appeal.") Also see, *Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d 933, 938 (7th Cir.2001); *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1139 (7th Cir.1994); *Tincher v. Wal–Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir.1997).

▪ We may grant a motion for a new trial where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1367 (7th Cir. 1996); quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 516 (7th Cir.1993); *Emmel v. Coca–Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir.1996); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir.2000) (grant of new trial proper "[o]nly when a verdict is contrary to the manifest weight of the evidence"); *Robinson v. Burlington Northern R.R. Co.*, 131 F.3d 648, 656 (7th Cir.1997) ("clear weight of the evidence"). Seventh Circuit review of a decision on a new trial is "narrowly circumscribed" because "[t]he district court, having seen the presentation of the evidence and observed the course of the trial, is in a unique position to rule on a new trial motion." *Valbert v. Pass*, 866 F.2d 237, 239 (7th Cir.1989), quoted in *Cefalu*, 211 F.3d at 424. Accordingly, denial of a motion for a new trial is reviewed

---

1. Rule 50(b) provides: "Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. If no verdict was returned, the court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial."

under the "abuse of discretion" standard. *Whiting v. Westray,* 294 F.3d 943, 944 (7th Cir.2002)

### 1. *Judgment as a Matter of Law.*

### a. *The Timeliness of the Failure-to Hire Claim.*

Preferred argues that Teresa Raloff's failure-to-hire claim was untimely. It presents the same three points that it presented on summary judgment, with an added wrinkle based on the jury's verdict in favor of Preferred on the EEOC's claim that Preferred engaged in a pattern or practice of discrimination. Preferred's three points are: Ms. Raloff never filed an EEOC charge; her failure-to-hire claim is not like or reasonably related to the other disparate treatment claims that were based on timely charges; and, since an untimely claim can survive only where the EEOC has a valid pattern or practice claim, Ms. Raloff's failure-to-hire verdict is based on an untimely charge because the jury returned a verdict in favor of Preferred on the EEOC's pattern or practice claim.

■ Before we address Preferred's argument on the merits, we note that Preferred failed to raise the timeliness of the EEOC's claim on behalf of Ms. Raloff in its written Rule 50(a) motion. Nor did we find any mention of it in the trial transcript, where Preferred orally argued its motion for judgment as a matter of law. Although counsel for Preferred argued for judgment as a matter of law on the ground that the EEOC had failed to satisfy its burden of proving its pattern or practice claim (a point mooted by the jury's verdict

in its favor), he nowhere mentioned the timeliness issue in that argument. Since Preferred did not raise the timeliness issue in its written or oral motion for judgment as a matter of law, Preferred has waived its opportunity to address the issue of whether the failure-to-hire claim was timely. *Alverio,* 253 F.3d at 938; *Downes,* 41 F.3d at 1139; *Tincher,* 118 F.3d at 1129.

Nevertheless, even assuming that Preferred properly preserved its argument, we conclude—as we did on summary judgment—that the failure-to-hire claim was timely. Preferred's argument in its motion for judgment as a matter of law issues from two erroneous assumptions. First, that the failure-to-hire claim was, as it repeatedly suggests, "*Ms. Raloff's* claim." It was, more accurately, the *EEOC's* claim on behalf of itself and Ms. Raloff.[2] Its second error is its assumption that the jury's conclusion as to a *factual* matter—whether the EEOC proved its pattern or practice claim—can nullify the court's decision that the underlying claim was timely filed as a *matter of law.*

Preferred argues, as it did on summary judgment that the EEOC's failure-to-hire claim on behalf of Ms. Raloff must be founded on a valid pattern or practice claim. It asserts that, since the jury found in favor of Preferred on the EEOC's pattern or practice claim, then the failure-to-hire claim was *not* founded on a valid pattern or practice claim and, as a result, that claim was untimely. In our entry on summary judgment we addressed Preferred's timeliness argument at some length and rejected it. We discussed the issue in the context of an *EEOC* charge of

---

**2.** In our original Entry on All Pending Motions, where we addressed Preferred's arguments on summary judgment, we noted, for example, that Preferred "alleges that some of *the EEOC's claims* do not rest on a timely charge of discrimination so that the EEOC's pattern or practice claim is time barred, as is

the failure-to-hire claim *on behalf of* Teresa Raloff." Entry, p. 2. We also noted, for example, that: "The EEOC has brought ... individual disparate treatment claims *on behalf of* seven employees .... [including] Theresa Raloff (alleging discriminatory failure to hire)." Entry p. 15.

discrimination as contrasted with an *individual's* charge. Entry, pp. 83–87. We reaffirm our conclusion there and call the parties' attention to that discussion.

As to Preferred's second argument, we fail to see how the jury's verdict in favor of Preferred on the EEOC's pattern or practice claim—a verdict based on facts supported and rebutted by substantive evidence concerning religious discrimination—invalidates the failure-to-hire claim on the basis of the *timeliness* of the antecedent EEOC charge. We found on summary judgment, as a matter of law, that the EEOC's claim on behalf of Ms. Raloff did *not* depend upon the presence of a valid pattern or practice claim so that even if the EEOC did not have a viable pattern or practice claim its claim on behalf of Ms. Raloff was still timely. But even if the timeliness of the Raloff claim had to be predicated on a valid pattern or practice claim, the fact that the jury found against the EEOC as *a matter of fact* has no legal effect on our finding that the EEOC's pattern practice claim was valid *as a matter of law.*

*Harper v. Godfrey Co.,* 45 F.3d 143 (7th Cir.1995), which Preferred cites in its reply brief, stands for the unremarkable proposition that complaint allegations must be like or reasonably related to the allegations contained in the EEOC charge underlying it. *Harper* involves the relationship between the allegations contained in the complaint and the allegations contained in the EEOC charge filed by an *individual.* It does nothing to alter our conclusion that the claim on behalf of Ms. Raloff properly piggy-backed on the four timely claims and thus was timely.

b. *The Jury's Award of Punitive Damages.*

Preferred seeks judgment as a matter of law on the jury's award of punitive damages on the basis that the EEOC present-

ed legally insufficient evidence to support the award. It writes: "Absent from the evidence presented to the jury was any foundation upon which the jury's punitive damages assessment can stand; that is, evidence that demonstrated an awareness in the corporate mind of Preferred that its conduct was not covered by the First Amendment." Def. Brief, p. 4. Preferred bases its argument on Ms. Steuerwald's testimony that she had a good faith belief that her conduct was protected by the Constitution.

■ A jury may award punitive damages in a Title VII case where the employer has acted with "malice" or with "reckless indifference" for the rights of the plaintiff. 42 U.S.C. § 1981a(b)(1). As Preferred correctly points out, "[t]he minimum requirement for a punitive award is that the employer 'discriminate in the face of a perceived risk that its actions will violate federal law.'" *EEOC v. Indiana Bell Telephone Co.,* 256 F.3d 516, 527 (7th Cir.2001), *quoting Kolstad v. American Dental Ass'n,* 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

The Seventh Circuit has enumerated two circumstances in which this "minimum requirement" may not be enough to sustain an award of punitive damages. Preferred argues that this case is subject to one of those exceptions: "an employer aware of a risk nonetheless may believe that its conduct is lawful, making a punitive award inappropriate." *Id.* Preferred thus argues that, even if Ms. Steuerwald (and other management personnel) perceived a risk of running afoul of the law, she (and they) had a good faith belief that her (and their) conduct was protected by the First Amendment.

■ The jury could, indeed, have concluded that Ms. Steuerwald *did* have a good faith belief that her conduct was protected by the Constitution. As Preferred pointed out in its brief, Ms. Steuerwald

testified at trial that she had such a good faith belief. Defense counsel also argued for her good faith belief in closing argument. Additionally, Jury Instruction No. 13 on punitive damages required the EEOC to prove by a preponderance of the evidence that "(4) Preferred did not have a good-faith belief that it was acting in compliance with federal law prohibiting religious discrimination and retaliation."

The stubborn fact remains, however, that the jury did *not* reach Preferred's desired conclusion. Nor was it compelled to do so. In determining whether punitive damages are warranted, we focus on the employer's state of mind. *Kolstad,* 527 U.S. at 537–538, 119 S.Ct. at 2118. Based on the evidence before it, the jury might reasonably have concluded that Ms. Steuerwald thought that her conduct was justified not by a good faith belief that it was protected by the law, but that it was protected—even mandated—by a "higher law" and that she persisted in her conduct notwithstanding her perception that it might be contrary to positive law. In other words, the jury was not required to believe Ms. Steuerwald's testimony that she believed her conduct to have been protected by the First Amendment. It reasonably may have concluded, based on the evidence before it, that she would have engaged in the same conduct regardless of whether it fell within the protection of the First Amendment.

Still, the jury had to base its punitive damages award on legally sufficient evidence and we conclude that it did. There was ample evidence to support the jury finding of punitive damages and neither exception to the awareness-of-risk analysis applies here. It was established at trial, for example, that Ms. Steuerwald and other management personnel, notably Mike Pyatt, were well aware that Ms. Steuerwald's actions could lead to lawsuits. She said as much with respect to her refusal to hire Ms. Raloff. The jury also heard testimony that Mike Pyatt acknowledged that Ms. Steuerwald was aware of the risk of lawsuits and was willing to run that risk. Ms. Steuerwald also testified both that she had received complaints of discrimination and that she was careful not to discriminate on the basis of religion because to do so was against the law. As the Seventh Circuit noted in *Bruso v. United Airlines, Inc.,* 239 F.3d 848, 857–858 (7th Cir.2001), "[a] plaintiff may satisfy this element [i.e. the awareness that he may be violating the law] by demonstrating that the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's policies for implementing those laws." These few examples are enough to establish that Ms. Steuerwald was aware that her conduct and that of her management team ran the risk not merely of violating the law—enough by itself to prove awareness of risk—but ran the risk, specifically, of discriminating on the basis of religion.

■ In addressing the good faith exception to awareness of risk, the Seventh Circuit has repeatedly stated that the employer can avoid punitive damages by showing that it "engaged in good faith efforts to implement an antidiscrimination policy." *Bruso,* 239 F.3d at 858; *Hertzberg v. SRAM Corp.,* 261 F.3d 651, 662 (7th Cir. 2001). That is precisely what Preferred did not do. Here, the highest levels of management were involved in the discrimination and harassment that the jury found; these personnel included Jackie Steuerwald (Preferred's President and CEO) and Mike Pyatt (Preferred Human Resources Director). The jury heard testimony that Preferred had no anti-harassment policy concerning religion and that no management personnel had any training, or conducted any training, in religious discrimination or harassment. Nor did Preferred have a procedure to handle complaints of religious discrimination.

Additionally, Ms. Steuerwald testified that she did not consider attorney Cummings' letter protesting Sondra Sievers's demotion to be a complaint about religious discrimination. Mike Pyatt testified that he did not think it necessary to conduct an investigation after Mary Mulder complained of religion in the work place. Instead, Mr. Pyatt invoked his religious beliefs and told Ms. Mulder that she was the hardest kind to break. Similarly, Mr. Pyatt testified that he considered Mary Mulder's resignation letter to be a criticism of Jackie Steuerwald's religious views, but not to be a complaint of religious discrimination. Thus he saw no need to conduct an investigation after receiving Ms. Mulder's letter. Finally, the jury returned a verdict in favor of the EEOC's pattern or practice of hostile environment based on religion, a finding of "frequent," and/or "severe," and/or "pervasive" religiosity in the work place, notwithstanding employee complaints. This, too, tends to support an award of punitive damages. In sum, the jury reasonably could have concluded from these facts (and others contained in the trial record) that Preferred management had a callous disregard for the religious views of those who disagreed with them. The facts are, therefore, sufficient to sustain its award of punitive damages.

### 2. *Preferred's Alternative Motion for New Trial.*

■ In the event we denied Preferred's motion for judgment as a matter of law,

Preferred asks for a new trial on the two issues just addressed. As we noted earlier, we may grant a motion for a new trial "[o]nly when a verdict is contrary to the manifest weight of the evidence." *Cefalu,* 211 F.3d at 424.

For the reasons already addressed, we find that the jury's verdict as to the failure-to-hire claim and punitive damages was supported by sufficient evidence so that defendant's motion for a new trial is denied.[3]

Although we will address the punitive damages issue again shortly, we have no doubt that the evidence cited earlier was considerably more than a "scintilla" so that it was more than enough to survive a challenge pursuant to the manifest-weight-of-the evidence standard. Accordingly, we DENY Preferred's motion for a new trial on both the timeliness of the Raloff claim and the punitive damages award.

### B. *Defendant's Motion for New Trial.*

Defendant seeks a new trial pursuant to Rule 59 on Mary Mulder's constructive discharge claim, Teresa Raloff's failure-to-hire claim, and all of the EEOC's harassment claims (both pattern or practice and on behalf of the named individual). As we noted earlier, a new trial may be granted where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid–America Tablewares,* 100 F.3d at 1367. Since Preferred does not challenge the sufficiency of the evidence to support any of these deci-

---

**3.** The failure-to-hire claim is not properly before us on a motion for a new trial. Preferred has never argued—neither on summary judgment nor in its post-trial motions—that the EEOC's evidence in support of the failure-to-hire claim was insufficient to sustain a verdict. Instead, it sought summary judgment on that issue solely on timeliness grounds, an issue we resolved in favor of the EEOC as a

matter of law. Accordingly, the failure-to-hire claim went to the jury only on its merits—that is, whether or not there was a genuine issue of material fact as to whether Preferred discriminated against Ms. Raloff on the basis of religion. It was not submitted to the jury on the timeliness issue. Since the issue of timeliness was never tried, there is no basis for ordering a "new" trial on it.

sions, we take its motion to be based on the argument that it was not given a fair trial.

Preferred raises two issues to support its argument for lack of fairness. First, that the trial was defective because the jury did not get a chance to consider adequately its Constitutional argument. And second, that we used the wrong legal standard in rendering the contours of discrimination based on religion. Preferred does not point to any particular mistake—for example, our use of an erroneous jury instruction, or our failure to adopt one or more of its proposed instructions, or our ruling on any particular evidentiary issue. Nevertheless, we briefly address the issues it raises.

### 1. *The Constitutional Issues.*

Preferred argues that: (a) we did not correctly address the balance between Preferred management's rights under the First Amendment and the Religious Freedom Restoration Act as against the interest of the federal government to enforce Title VII and as against the rights of Preferred employees to work in an environment free of religious discrimination and harassment under Title VII; and (b) we did not permit the jury to consider the evidence in light of Preferred's Constitutional rights. We addressed Preferred's arguments as to the first issue at length in our entry resolving Preferred's motion for summary judgment and we see no reason to alter our conclusion now. We take up the second here.

### a. *The Viability of the Pattern or Practice Claims.*

■ Although we addressed Preferred's First Amendment and RFRA arguments at length in our entry on summary judgment, we did not address one of the reasons that Preferred offered later in its trial brief to support its argument that the EEOC's pattern or practice claims should be dismissed. We address it here in order to ensure that it is preserved on the record. Preferred argued that the EEOC's pattern or practice claims violated the First Amendment and the religious Freedom Restoration Act because those claims, when added to the claims brought on behalf of the named individuals, were overkill. Preferred argues that, if filing the disparate treatment claims on behalf of the named individuals satisfied the First Amendment's and the RFRA's "narrow tailoring" requirement, then filing the pattern or practice claims *in addition to* the disparate treatment claims exceeded the permissible bounds of "narrow tailoring."

We disagree. As Preferred has repeatedly pointed out since the inception of this lawsuit, Title VII provides two different enforcement regimes: one, pursuant to section 706 (42 U.S.C. § 2000e–5), provides for individual discrimination lawsuits, brought either by individual complainants or by the EEOC on behalf of them; the other, pursuant to § 707 (42 U.S.C. § 2000e–6), provides for pattern or practice claims brought by the EEOC. The existence of two regimes is to enforce different sets of rights. More than thirty years ago, the Seventh Circuit noted the distinction between a "pattern or practice [of] discrimination" and "single, isolated act[s]" of discrimination. *U.S. v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local No. 1,* 438 F.2d 679, 681 (7th Cir.), *cert. denied,* 404 U.S. 830, 92 S.Ct. 75, 30 L.Ed.2d 60 (1971). Rights pursuant to the former are vindicated under § 707; under the latter by § 706. As House Report 92–238 observed about pattern or practice lawsuits:

> Pattern or practice discrimination is a pervasive and deeply imbedded form of discrimination. Specific acts or incidents of discrimination within the Commission's jurisdiction are frequently symptomatic of a pattern or practice

which Title VII seeks to eradicate. The Commission has the basic responsibility to achieve the objectives of Title VII. Since the Commission is being vested with cease and desist enforcement authority, it is imperative that it be empowered also to deal with "pattern or practice" discrimination in order to deal comprehensively with systemic discrimination.

1972 U.S.C.C.A.N. 2137, 92nd Cong., 2nd Sess.1972.

In sum, Title VII authorizes the EEOC to pursue either or both kinds of action, under appropriate circumstances, because each is designed to vindicate a different set of rights: the rights of one or more individuals to engage in work free of discrimination or harassment; and the rights of all employed (or potentially employed) in a workplace to be free of systemic discrimination or harassment. Additionally, while individual disparate treatment claims may issue in injunctive relief designed to remedy particular acts of discrimination and/or harassment, the EEOC may seek broad injunctive relief in a pattern or practice case. We conclude that the EEOC's use of both arrows in its quiver does not violate the principle of narrow tailoring that is required by the First Amendment and the RFRA.

### b. *Jury Consideration of First Amendment Issues.*

■ Preferred asserts that:

Concerning the individual harassment claims, the First Amendment necessarily colors the presentation of evidence to the jury. In other words, much of the conduct about which the EEOC complained had its origin in the exercise of Preferred's religious beliefs (through its agents). No allowance was made, either in the jury instructions or pretrial rulings, for the First Amendment which is an error that cannot be considered harmless.

Brief in Supp. of New Trial, p. 3. It is more accurate to say that Preferred disagrees with our conclusion than that we failed to take Preferred's Constitutional rights into account when we addressed these issues in pre-trial rulings and in the jury instruction conference. We addressed the argument at length on summary judgment, where we concluded, as a matter of law, that the EEOC did not violate Preferred's rights under the First Amendment and the RFRA, whereas there was a genuine issue of material fact as to whether Preferred management violated its employees' rights under Title VII.[4]

Additionally, as earlier noted, Ms. Steuerwald testified that she had a good faith belief that her conduct did not violate the Constitution and that she believed her conduct was protected by the Constitution. Counsel for Preferred also was permitted to argue in closing argument for Ms. Steuerwald's good faith belief in Constitutional protection. In the conference on jury in-

---

4. We infer from Preferred's reply brief in support of its motion for a new trial that it may be arguing that the jury should have had an opportunity to consider whether the EEOC overstepped its authority in bringing the pattern or practice hostile environment claims, and/or that the jury should have had an opportunity to consider whether Preferred management had a Constitutional right to engage in the kind of religious activities in which they engaged. We conclude now, as we did on summary judgment and during pre-trial con-

ferences, that both of those issues are issues of law for the court and not issues of fact for the jury. As we noted then, similar issues in analogous First Amendment cases have been treated as issues of law and are, therefore, inappropriate for jury consideration. *E.g., Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) ("whether a government employee's speech is protected by the First Amendment is a question of law that the district court properly withheld from the jury.").

structions, Preferred objected to Instruction No. 13 [5] on the ground that it should have been phrased "positively," rather than "negatively." That is, Preferred suggested wording that included: "If Preferred was unaware that its conduct could be classified as a violation of Title VII, or believed that its conduct was lawful, then you should not award punitive damages on the EEOC's claims." Even assuming that Preferred's rendering were legally correct,[6] implementing it presented several practical problems. First, we noted at the instruction conference that, if we made the suggested change, we would have to revise all similar instructions from "negative" to "positive."

Second, Instruction No. 13 is formulated in terms of the EEOC's burden of persuasion. It itemizes the factors that the EEOC was required to prove in order to establish a basis for an award of punitive damages. Accordingly, it places the burden of persuasion on the EEOC to show that "Preferred *did not have* a good-faith belief that it was acting in compliance with federal law prohibiting religious discrimi-

nation and retaliation." Using Preferred's suggested rendition might have had the effect of confusing the jury as to the burden of persuasion, so that the jury may have held Preferred to the task of showing that it was *unaware* of violating the law or that it *had* a good faith belief. We conclude that the jury had an opportunity to consider all the evidence pertinent to the Constitution consistent with its fact-finding mission.[7]

2. "Because of Religion."

Preferred argues that we did not apply the correct legal analysis with respect to Mary Mulder's constructive discharge claim, Teresa Raloff's failure to hire claim, and all of the hostile environment claims (of both individual and pattern or practice varieties). Preferred argues that our failure manifests itself most insistently when, in stating the causal connection between an adverse employment action and religion, we used the formulation "because of religion" instead of "because of such individual's religion." *See*, 42 U.S.C. § 2000e–2(a).[8] Preferred argues that by using the "generalized" version—"because of reli-

---

**5.** Jury Instruction No. 13 was the instruction on punitive damages. It provides, in pertinent part: "You may award punitive damages if you find by a preponderance of the evidence, that (1) Preferred intentionally engaged in a discriminatory pattern or practice of discrimination with malice or reckless indifference to the class members' rights to be free from such discrimination, (2) a manager or other high-level employee or employees committed the violations of law, (3) the managerial agent or high-level employee was acting in the scope of his or her employment, and (4) Preferred did not have a good-faith belief that it was acting in compliance with federal law prohibiting religious discrimination and retaliation."

**6.** Its proposed instruction was *incorrect* in so far as it would have required EEOC to prove that Preferred knew its conduct "could be classified as a violation of Title VII." To prove malice or reckless disregard requires a showing only that the employer was aware of a risk that it was violating the law and not

specifically the discrimination laws. *E.g., Bruso*, 239 F.3d at 857–858.

**7.** Preferred nowhere argues in its post-trial motions that Instruction No. 13, or any other instruction, was incorrect as a matter of law.

**8.** The statute provides:

It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's religion ...;* or,
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's ... religion.*
Emphasis added.

gion"—we failed to require the EEOC to prove the causal connection between the adverse employment actions and the individuals' affiliation with the Roman Catholic church or their adherence to Catholic beliefs or doctrine.

 Our rendering of the standard fairly implements our understanding of the actual nature of the EEOC's cause of action. Once again, we addressed this issue on summary judgment and in the jury instruction conference. We see no reason to alter our conclusion that *Venters v. City of Delphi*, 123 F.3d 956, 971–972 (7th Cir. 1997) and *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169–1170 (7th Cir.1998) provide for a cause of action for employment discrimination based on the plaintiff's failure to conform to the religious requirements of her employer and having nothing necessarily to do with the plaintiff's own religious affiliation. As the court noted in Venters "[w]hat matters in this context is not so much what [the plaintiff's] own religious beliefs were, but [the employer's] asserted perception that she did not share his own." 123 F.3d at 792. *See, Entry*, pp. 107, n. 22, 135–136. Focusing on *Venters*, Preferred insists on a distinction between public and private employers with respect to this issue. But this conveniently ignores the fact that *Sattar* involved a private entity.[9] In sum, we see no principled

reason for distinguishing between a public and private employer on this issue and Preferred has offered none. Next, if we had phrased the causal element as "because of such individual's religion" (or "because of [named plaintiff's] religion") instead of "because of religion," we would have run the risk of creating the erroneous impression that the only religious rights protected by Title VII are those associated with an organized religion or denomination. From the outset of this lawsuit, only Preferred has chosen to characterize the underlying issue as the named-plaintiffs' affiliation with Catholicism. The lawsuit focuses, however, on the named individuals' failure to conform to Ms. Steuerwald's religious requirements, and we have maintained our focus on that cause of action.

All of this having been said, can anyone seriously entertain doubt that our rendition—"because of religion"—means "because of such individual's religion"? That is what we said in Jury Instruction No. 4, where we quoted the statute verbatim. In Instruction No. 4 we informed the jury that "based on religion" and "because of such individual's religion" included "discriminating against an employee because of the employee's religion or because the employee's religious beliefs or practices fail to conform to the employer's religious beliefs or practices." [10]

---

**9.** We repeat our quotation of *Sattar* 's rendering of the prima facie case of religious discrimination: [I]n order to establish a prima facie case in actions *where the plaintiff claims that he was discriminated against because he did not share certain religious beliefs held by his supervisors*, we hold that the plaintiff must show (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, the employee's job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon *the employee's failure to hold or follow his or her employer's religious beliefs*. 138 F.3d at 1169–1170, *quoting Shapolia v.*

*Los Alamos Nat'l Laboratory*, 992 F.2d 1033, 1038 (10th Cir.1993) (emphasis added).

**10.** Instruction No. 4 reads in its entirety:

In this case the EEOC has alleged that Defendant Preferred Management engaged in discriminatory employment practices *based on religion*. Title VII of the Civil Rights Act prohibits employers from discriminating against employees or prospective employees *on the basis of,* among other things, *religion*. The statute provides: It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

Common sense also leads to the obvious conclusion that, if an employee fails to conform her religious views to her employer's and she suffers an adverse employment action as a result, then she is the victim of discrimination *because of her religion.* Perhaps that is why the federal courts routinely substitute "because of [sex, race, religion, etc.]" for the statutory "because of such individual's [race, sex, religion]. . . ." In *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 76, 118 S.Ct. 998, 1000, 140 L.Ed.2d 201 (1998), for example, the Supreme Court noted:

> This case presents the question whether workplace harassment can violate Title VII's prohibition against "discriminat[ion] . . . because of . . . sex," 42 U.S.C. § 2000e–2(a)(1), when the harasser and the harassed employee are of the same sex.

And again:

> Title VII's prohibition of discrimination "because of . . . sex" protects men as well as women, on of discrimination "because of . . . sex" protects men as well as women. . . .

523 U.S. at 77, 118 S.Ct. at 998. The ellipses are the Court's own. Justice Thomas's entire concurring opinion consists of the following sentence: "I concur because the Court stresses that in every sexual harassment case, the plaintiff must plead and ultimately prove Title VII's statutory requirement that there be discrimination 'because of . . . sex.'" 523 U.S. at 82, 118 S.Ct. at 1003. The ellipses were provided by Justice Thomas. If these ellipses tell us anything it is that the phrase "such individual's" is ordinarily unnecessary to capture the element of causation.

In *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 370 (7th Cir.1997), the Seventh Circuit had no difficulty using the short-hand version—"because of . . ."—without fear of misunderstanding: "Thus, to prevail in an employment discrimination case under Title VII, the plaintiff must prove by a preponderance of the evidence that the employer made an adverse employment decision with respect to him because of race, color, religion, sex, or national origin." *Also see, Shermer v. Illinois Dept. of Transp.,* 171 F.3d 475, 477 (7th Cir. 1999). No ellipses needed; none used.

Neither the Supreme Court nor the Seventh Circuit found it necessary to use the entire phrase "because of such individual's religion" in order to give voice to the obvious causal element. In *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996) the Seventh Circuit delivered the obvious message: that "because of" means "on the basis of":

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical

against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's religion . . .;* or,

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's . . . religion.*

It also prohibits employers from creating or tolerating or condoning a hostile work environment *based on religion.*

Title VII prohibits an employer from discriminating against an employee *because of the employee's religion or because the employee's religious beliefs or practices fail to conform to the employer's religious beliefs or practices.* The statute defines the term "religion" to include all aspects of religious observance and practice, as well as belief. Emphasis added.

**970**

conditions shall be treated the same for all employment purposes.

 We conclude that our use of the phrase "because of religion" in several jury instructions[11] to describe the causal element connecting an adverse employment action with religion was entirely justified. The phrase was a correct statement of the law as we understand it, and it "told the jury what it needed to know." *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir.1994). To obtain a new trial based on poorly rendered jury instructions, Preferred must show that: "(1) the instructions did not adequately state Seventh Circuit law and (2) it was prejudiced by the error because the jury was likely confused or misled." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir.2001). Preferred has made no such showing here.

### II. *Conclusion.*

For the reasons addressed, we DENY Preferred's Motion for Judgment on the Evidence and in the Alternative for a New Trial and we DENY its Motion for New Trial.

---

11. We note, again, that Preferred has not identified any particular jury instruction that, it maintains, runs afoul of the law. It argues, instead, that the instructions are generally infected as a result of our alleged misreading of the law's requirements. "It is well established that [a jury instruction] 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 71, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991).